[S. F. No. 684. In Bank.—October 9, 1896.]

D. A. McDONALD, Petitioner, *v.* WILLIAM M. HINTON, Registrar of Voters of City and County of San Francisco, Respondent.

Elections—Construction of Code—Certificate of Nomination—Conflicting Conventions of Same Party—Duty of Registrar—Mandamus.—Sections 1186 and 1187 of the Political Code contemplate that a political party which at the last election polled at least three per cent of the entire vote, can be represented by only one convention; and when each of two or more bodies of voters claims to be the convention contemplated by the code, the registrar must determine in the first instance which one of them was an organized assemblage of delegates representing the particular political party named; and he is not in duty bound to file a certificate of nomination of a convention claiming to be a convention representing a political party, which does not in fact represent it, merely because the certificate is in due and regular form; and where a proceeding for a *mandamus* against him is submitted upon such admitted facts, the writ must be refused.

APPLICATION in the Supreme Court for a writ of mandate to the Registrar of Voters of the City and County of San Francisco.

Petitioner, as a duly qualified elector of the city and county of San Francisco, and a candidate for office, nominated by a convention which he alleges represented the Democratic party of said city and county, asked, on behalf of himself, and of all persons similarly situated, of said Democratic party, and of all nominees of said party and convention, for a writ of mandate to compel William M. Hinton, as registrar of voters of the city and county of San Francisco, to forthwith file the certificate of nomination of said convention, and to cause to be printed upon the ballots to be by him prepared for and used by the electors and voters at the election to be held on Novenber 3d, 1896, the names of the petitioner and all other nominees of said convention, and the office for which they were respectively nominated, and to place after each of said nominees the designation "Democrat." Petitioner avers that said convention was duly called by the general committee of the Demo-

cratic party of the city and county of San Francisco, which governs said party under a certain plan of organization; that the nominees of the convention called by said general committee in 1892 were recognized as the nominees of said Democratic party in the official ballot voted at the general election in that year, and in 1894 the names of the candidates nominated by the convention called by said general committee were placed upon the official municipal ticket, and after the name of each candidate was placed the designation " Democrat," and said designation was not placed after the name of any other candidate upon said official ballot; that the election in 1894 was the last one prior to the filing of this petition, held in said city and county, and that each and every one of said nominees polled at least three per cent of the entire vote of the district for which they were presented; that the secretary of the convention called by said general committee in 1896, duly prepared a certificate of nomination complying with the provisions of the law, which was, within the time required by law, presented to respondent with the demand that it be filed in his office as required by law, and that he cause the names of the nominees mentioned in said certificate, and the office for which they were nominated, to be printed on the official ballots to be used by the electors at the election to be held in said city and county on the third day of November, 1896, and after the name of each of them he placed the designation "Democrat"; that respondent refused to file the same, for the alleged reason that said document did not emanate from a " convention representing a political party which, at the last election before the holding of such convention, polled at least three per cent of the entire vote of the county, city, or other political division for which the nomination is made," as required by the Political Code, section 1186.   The answer of the registrar denied the right and authority of the convention which nominated the petitioner, to represent the " Democratic party," and averred that the state central

committee of the Democratic party of the state of California, had found, adjudged, and determined that the authority under which said convention was called was not, and never had been, the organization of the Democratic party within the city and county of San Francisco, which determination was approved by the last state convention of the Democratic party; and further averred that the regular municipal convention of the Democratic party of San Francisco was then in session; and that the effect of granting the prayer of the petitioner would be to deceive and confuse the voters, and amount to a fraud upon the public.

Further facts are stated in the opinion of the court.

*Eugene Lent, William F. Humphrey, P. F. Dunne, David Friedenrich, Charles Heggerty,* and *Joseph Rothschild,* for Petitioner.

*T. C. Spelling,* for Intervenors.

*Garrett W. McEnerney,* for Respondent.

THE COURT.—The writ should be denied. Whether a registrar, in filing or refusing to file a proffered certificate of nomination by a convention, acts ministerially or judicially, it is clear that he cannot be commanded by *mandamus* to do an act which the law does not require him to do. Now, sections 1186 and 1187 of the Political Code clearly contemplate that a political party which, at the last election, polled at least three per cent of the entire vote, can be represented by only one convention. A contrary view would certainly defeat the purpose of the law. Therefore, when each of two or more bodies of voters claims to be *the convention* contemplated by the code, the registrar must determine—in the first instance, at least—which one of the bodies was "an organized assemblage of delegates *representing*" the particular political party named. To say that the presentation of a certificate in due form is conclusive of the essential fact upon which the alleged right rests

is to announce the principle that each party to a controversy is the exclusive judge of his own case. If the issue were presented here, whether or not the convention which the petitioners represent was the convention which in fact represented the Democratic party, then this court would have to consider whether or not it would, upon *mandamus*, hear evidence, and, after a trial here, itself determine the essential fact in dispute. But this proceeding was submitted upon the admission that the convention represented by petitioners only "claimed to be," but was not, a convention representing said political party, and upon the theory that the registrar was bound to file their certificate merely because it was in due and regular form. Therefore, the question whether or not this court should, upon *mandamus*, inquire into the fact, and determine whether said convention did or did not represent said political party, is not before us. It therefore does not appear that the registrar has refused to do any act which the law enjoins upon him as a duty.

The petition for the writ of *mandamus* is denied, and the proceeding dismissed.

McFARLAND, J., HENSHAW, J., VAN FLEET, J., and TEMPLE, J., concurred.

HARRISON, J., and BEATTY, C. J., dissented.

GAROUTTE, J.—dissenting. I dissent. There are three constructions to be placed upon this statute: 1. That the action of the registrar is final and conclusive; 2. That it is the duty of the registrar to decide as a fact whether or not the certificate presented by him comes from the regular and genuine Democratic or Republican party which it purports to represent, and that such decision by him is reviewable by this court; 3. That it is the duty of the registrar to file all certificates which, upon their face, comply with the statute.

To hold that the action of the registrar is final, I cannot indorse for a moment. Every court which has given the question any consideration whatever has held

against such a construction. It is placing a power so tremendous in the hands of the registrar, that such a construction should not be held if possible to avoid it. The language indicating such intention upon the part of the legislature must be so plain as to admit of no doubt. If the language needs construction it should be construed in some other direction. If the rejection of a certificate by the registrar is final, if it is beyond all review by courts, he could refuse to file all certificates purporting to come from opposing political parties, and, in effect, hold the result of the election in the hollow of his hand. The secretary of state, by refusing to file a certificate presented to him coming from one of the great political parties, could absolutely prevent that party through its electors from voting for a candidate for President of these United States. It is needless to say that the court is bound to look further for the true construction of this act.

The second construction suggested cannot be maintained. It seems impossible that it was ever intended for this court to enter into a trial of fact as to which set of claimants constituted the regular, true, genuine Democratic or Republican party. It is admitted by counsel that such question of fact is not to be determined by the principle or principles represented by these respective claimants; but it is insisted that such question of fact must be decided by an investigation as to the regularity of the organization; that respective abstracts of title must be furnished, and that the legal title must prevail. Such an investigation would open up most interesting fields. As in titles to real estate, I see no way of cutting off the investigation until it goes back to the original or paramount source of title, whether that original title originated in the city, state, or nation. I do not know what particular principles of law could be invoked in the investigation of such a fact. Its determination would depend upon the validity of the action of a committee; and this validity would depend upon the regularity and validity of mo-

tions to adjourn, to reconsider, to lay on the table, to postpone, as to what constitutes a majority, a quorum, a special meeting, a legal committee, and a thousand other matters purely of parliamentary usage. In the trial of such a question Blackstone and Kent would be entirely displaced by Cushing or Roberts. That character of investigation had better come for consideration before a high school debating society rather than a court of last resort. Again, let us assume that the members of the genuine central committee which guided the destinies of its party all resign. The power to perpetuate the organization rested in its hands alone, and now that committee is no more. Thus a great party would be placed in a sorry plight. It would be in the position of a trust without a trustee, and I presume, upon the happening of such a grave emergency, a court of equity would fill the breach and appoint a new committee. Let us assume a case where the committee would neither resign nor take any steps to nominate a ticket to be voted for by its party electors. We thus have a present, live organization; it is regular; there is no flaw in its title; it is beyond suspicion; it represents and stands for the Republican party, but it does nothing. Under such circumstances is it possible that no Republican ticket could be placed in the political field for which Republicans might cast their votes ? Time is too short for me to indulge in other suggestions showing absurd results. It is not because they do not exist, for there are more and worse; and I am of the opinion that this construction must not maintain if there is any other road to travel, however long and rough it may be.

I think the third construction contended for should be adopted, and that when a certificate is presented to the registrar, which is in the form required by the law, he is bound to receive and file it. Penalties are provided against forging certificates, and it is further provided that affidavits as to the truthfulness of the facts therein recited must be attached. In a limited way these

provisions seem to afford the registrar some protection; but, however that may be, if the protection against fraud is insufficient, it is the fault of the law. The statute provides that the registrar must "then and there forthwith" act upon the certificate presented, either by accepting or rejecting it. The very language itself clearly indicates that there shall be no hearing upon the facts. The language, *ex necessitate,* precludes such hearing. If the registrar is not first to investigate the facts, then certainly the law does not contemplate that the court shall subsequently investigate them. The construction which, I think, should be adopted is simply this: All certificates valid upon their face, should be received and filed, and, if two or more certificates are presented by persons claiming to represent the same party, they should each be filed, and the nominees therein contained have an equal chance upon the ballot. The only serious result to flow from such holding is that it tends to disorganize and disintegrate party organizations. It casts upon each elector the duty of making a personal investigation as to the candidate whom he desires to support with his suffrage. It forces him to rely upon his own knowledge, rather than depend upon party names or party symbols. Possibly this construction may, for this reason, be objectionable, but such objection is entirely overshadowed by the objections raised to the other constructions suggested. Of all the evils, it is certainly the least, and, this being so, it will be assumed that the legislature intended the statute to be so construed. The intention of the legislature in this regard could be made plainer, and probably the objections here suggested could be avoided by future legislation. Possibly the whole law should be repealed by reason of its many crudities and contradictions.

The writ should be granted.

Rehearing denied.