[S. F. No. 1646.   In Bank.—September 30, 1898.]

## E. L. HUTCHINSON et al., Petitioners, v. L. H. BROWN, Secretary of State, Respondent.

POLITICAL CONVENTION—FUSION TICKET—MINORITY NOMINATIONS—
   CONFLICTING CERTIFICATES.—A certificate of nominations, made
   by a regularly authorized state or district convention of a po-
   litical party, must be received and filed by the secretary of
   state, and its nominees placed upon the official ballot, notwith-
   standing it has nominated a fusion ticket representing other
   political parties besides its own; and a certificate of nomina-
   tions made by a minority of the delegates withdrawing from
   such convention, and organizing another, must be rejected, not-
   withstanding its nominees are members of that political party
   only.

MANDAMUS from the Supreme Court to the Secretary of State.

The facts are stated in the opinion of the court.

E. S. Van Meter, E. A. Bridgford, Stephen M. White, and Garret W. McEnerney, for Petitioners.

Thomas V. Cator, for Respondent.

BEATTY, C. J.—This is an original proceeding by *mandamus* to compel the secretary of state to file a certificate of nomination presented by E. L. Hutchinson, and F. L. Gregory, claiming to be chairman and secretary of the People's Party state convention, and to compel him to strike from the files of his office another certificate of nomination presented by D. T. Fowler as chairman, and Carlton H. Johnson as secretary of a People's Party convention, which is alleged to have been an illegal and pretended assemblage, not entitled to assume the name or exercise the powers of the People's Party.

There is no dispute as to the facts of the case, and those which we deem material may be very briefly stated.

The People's Party is a regular political organization, which at the general election of 1896 polled more than three per cent of the vote of the state. For more than two years it has had regularly chosen and organized state, and county, central committees and a state executive committee which exercises full powers when the state central committee is not in session. In May, 1898, the executive committee regularly issued a call for a state convention, to be held at Sacramento on the 12th of July, and made an apportionment of delegates to the different counties. Pursuant to this call the convention met and was duly organized on the day named, all but fourteen of the counties of the state being represented by delegates. Among other preliminary steps in the organization of the convention was the appointment of a conference committee "to counsel with other political reform forces with a view of political union." This committee, after consultation with a committee of Democrats and another committee of Silver-Republicans, agreed upon a plan of fusion which was reported to the convention and has been fully carried out, though it was never formally adopted. The plan of fusion was in brief to divide the state and district offices among the three parties according to a certain schedule of apportionment. To effect this object the People's Party convention was to nominate a full ticket, but the nominees for those offices allotted to the Democrats and Silver-Republicans were to place their resignations at the disposal of the conference committee, with the understanding that if the other party conventions thereafter to be held should conform their action to the plan of fusion, then such nominees

should be withdrawn and the nominees of the Democrats and Silver-Republicans substituted. Before this plan was reported to the convention James G. Maguire—a Democrat—had been nominated for governor, and although that was an office allotted to the Democrats in the plan of fusion, it was excepted from the arrangement for withdrawing candidates in favor of the nominees of the other parties. In other words, Judge Maguire was to be the Populist candidate for governor, whatever happened, provided only he would accept the nomination.

As soon as Judge Maguire was nominated a minority of the convention—protesting against the action of the majority—withdrew and organized another convention in another room. Of about one hundred and sixty delegates actually present, fifty-three participated in the new organization. The remaining delegates went on and nominated a full ticket, appointed managing committees, et cetera, and adjourned. The minority convention, after effecting an organization, also nominated a full ticket, appointed committees and adjourned. Hutchinson and Gregory were chairman and secretary of the original convention, and Fowler and Johnson chairman and secretary of the rival convention organized by the minority. Each set of officers presented to the respondent certificates containing lists of the nominees of their respective conventions. He filed that of the minority convention, and refused to file that of the majority convention. This proceeding has been instituted to compel him to reverse his action.

The law governing the case is found in the Political Code, sections 1185 *et seq.*, as construed by this court in a number of cases which we have had occasion to consider. It was determined in *McDonald v. Hinton*, 114 Cal. 484, that a political party can be represented by but one convention, and in case the chairmen and secretaries of two rival conventions present certified lists of nominees for filing, the officer whose duty it is to file such certificates should determine which of the two rival conventions really represents the party, and file its certificate, rejecting the other, notwithstanding it may be formally correct and sufficient. A question was discussed in that case which the court found it unnecessary to decide, viz., whether the decision of the registrar (or in this case the secretary of state) is final, or subject

to review and correction by the courts. In this case that question cannot be avoided, but it will not require any particular examination, since both parties to the controversy concede that the court not only may but must determine upon the admitted facts whether, as matter of law, the secretary should have filed the certificate which he rejected, and should have refused to file the certificate which he accepted.

It is conceded that both certificates are regular in form, duly authenticated, and that all the conditions of the statute relative to their presentation have been fully complied with. The only question is, which emanated from the regular and authorized convention of the party.

Upon this point we are satisfied that the respondent erred in his conclusion. It is clear that the full convention was regularly called and organized, and that only about one-third of its members withdrew after the nomination of Judge Maguire. The withdrawal of a minority of the delegates present did not dissolve the convention or destroy its identity. It remained as before, the People's convention, with full authority to nominate a ticket to be voted for at the election.

The fact—if it be a fact—that some or all of the delegates who remained were violating pledges or sacrificing party interests in nominating Judge Maguire and adopting the plan of fusion presents a question with which neither the secretary of state nor the court has the slightest concern. That is a matter to be settled between them and their constituents. Delegates to political conventions are no doubt trustees in a large sense of the word, but they discharge a trust with which the courts do not meddle. They obey or disobey instructions as they see fit, and the only remedy for their disobedience is the censure of the people expressed at the polls. This is true, at least so far as the ballot law is concerned. All the filing officer has to determine is whether the certificate offered for his acceptance emanates from the regular convention of the party. It is no concern of his whether the delegates to the convention have nominated members of their own party or of other parties, whether the nominees are there to stay or to be taken down. There is nothing unlawful in fusion. The statute does not forbid it, or attempt to do so, and a statute which did attempt it would be of very doubtful validity. It is

for the conventions of different party organizations to decide for themselves whether their principal objects are so far common and paramount over minor issues as to justify them in uniting upon a list of nominees drawn from all parties so agreeing. And even if they had nothing else in common except a desire to fill the offices, there is no power to prevent them from combining for that object.

One objection of the respondent is that by the call of the executive committee the People's Party convention was assembled for the purpose of nominating a full ticket, and, of course, a full ticket of Populists, and that if there was to be any fusion, or joint action with other parties, it was only to be the action prescribed by the executive committee, and put forth as part of the call for the convention.

As to this, it is enough to say that, according to universal party usage in California, the central or executive committee of a party has no function after one election is over, except to preserve the organization and take the necessary preliminary steps for the assembling of the next convention.

It has no right to forestall or in any manner limit or curtail the powers of the convention which it calls. The convention, when assembled, is the depository of all party power, and so continues until it adjourns, after which a new committee comes into power for the mere purpose of conserving the party interests pending the election, and of doing thereafter such things as may be provisionally necessary to keep up the regular organization and call another convention. It is, therefore, of no consequence what resolutions the executive committee chose to couple with its call for the People's Party convention. They were merely advisory, and as advice were worth just what the convention chose to rate them at.

This case is not like the Michigan cases upon which the respondent relies to sustain his action. The People's convention did not adjourn and its members unite with members of other conventions in the formation of a new convention, whereby its identity would have been destroyed. It continued its session by itself, and by itself nominated a full ticket as a Populist ticket. It proceeded regularly, and its action cannot be questioned because it nominated men who were not Populists, and made a bar-

gain by which some who were Populists were to retire in favor of Democrats, or Silver-Republicans.

It may be true that the result is the same as it would have been if the three conventions had fused. But the result is not what the ballot law is concerned with. What it demands is not a ticket of Simon-pure Populists, but only a ticket certified by the chairman and secretary of a regular Populist convention. The character and politics of the candidates are not the subject of inquiry for the secretary of state, but only for the voters. There is a wide difference between a fusion convention and a fusion ticket. A fusion convention represents no particular party; a fusion ticket may represent several parties, but is none the less entitled to a place on the official ballot for that reason. Several conventions holding separate sessions do not lose their identity by selecting the same set of nominees. The effect may be to cause difficulty at the next election from the impossibility of ascertaining the vote of the respective parties, but that is a difficulty to be dealt with when we come to it. For the present we have no doubt that the certificate presented by Hutchinson and Gregory is the one that should have been filed, and, consequently, that the other certificate presented by Fowler and Johnson should have been rejected.

The same observations apply to the certificates of nominations of district officers and members of Congress.

It is ordered that a peremptory writ of mandate issue as prayed.

Garoutte, J., Harrison, J., Temple, J., Van Fleet, J., and Mc-Farland, J., concurred.