STATE OF IOWA, EX REL. J. D. ROBBINS, Appellant, v. GEORGE H. PARKER, Defendant, and W. R. WHITNALL, Intervener, Appellees.

**Counties:** DIVISION INTO SUPERVISOR DISTRICTS: WHEN ORDER BECOMES EFFECTIVE. The order of a board of supervisors dividing a county into supervisor districts takes effect immediately upon the making of the order.

**Same:** NOMINATION OF SUPERVISORS: VACANCIES: HOW FILLED. A board of supervisors has power to divide the county into supervisor districts after the holding of a primary election and the nomination of supervisors; and where this has been done and prior thereto the nomination of a member of the board from the county at large was made, rather than for the district thereafter created, such nomination will not be treated as one for the district but a vacancy occurs to be filled by the proper authorities by a nomination for such district.

**Elections:** *Mandamus:* PLACING OF NAME OF CANDIDATE ON BALLOT. A proceeding by *mandamus* is the proper remedy to compel a county auditor to place the name of a candidate for office upon the official ballot.

**Same:** CERTIFICATE OF NOMINATION: FINALITY: JUDICIAL REVIEW. Ordinarily a certificate of nomination issued by a board of supervisors must be regarded as final unless objections are thereafter filed; but where the board issued a certificate of nomination for the office of a member of the board of supervisors from the county at large, when as a matter of fact there was no such office to be filled, the board having divided the county into districts subsequent to the nomination and certification thereof, the certificate was not final so as to preclude the court from determining the rights of the parties to have their names placed upon the official ballot, although no objections thereto were filed.

**Same:** JUDGMENT: CONCLUSIVENESS. A court has no power to create an office by ordering that a name should go on the official ballot

for that office; so that where one had been nominated for a member of the board of supervisors from the county at large and received a certificate of nomination, and the board subsequently and prior to the election divided the county into districts, thus abolishing the office of supervisor at large, a decree directing that the name of such person be placed on the official ballot for a supervisor at large was not conclusive of his right to hold the office of supervisor in his district, to which he had not been elected and for which he was not a candidate, although he received at the primary election a majority of the votes cast, both in the county at large and in such district.

*Appeal from Mills District Court.*—HON. A. B. THORNELL, Judge.

SATURDAY, APRIL 9, 1910.

THIS is a *quo warranto* proceeding to test the right of the defendant Parker to hold the office of member of the board of supervisors of Mills County, Iowa. The trial court dismissed the petition, and plaintiff appeals.—*Affirmed.*

*A. E. Cook* and *Harl & Tinley,* for appellant.

*W. S. Lewis,* for appellee Parker.

*John Y. Stone* and *Genung & Genung,* for Whitnall, intervener.

DEEMER, C. J.—Plaintiff claims that he was elected a member of the board of supervisors of Mills County at the November, 1908, election for the term beginning January 1, 1909. He alleges that he duly qualified for the office, but that the other members of the board refused to admit or accept him as a member under the claim that his election was invalid; that one James Greig was the incumbent of the office by reason of there being no election; that thereafter Greig resigned and defendant Parker was named as his successor; that defendant immediately quali-

fied and is now exercising the functions of the office. Defendant filed answer tendering some issues to be hereinafter noted. Whitnall, a citizen and resident of the county, filed a petition of intervention, in which he alleged that "the board of supervisors of Mills County, Iowa, on June 29, 1908, and after the nomination of candidates under the primary election of 1908, had divided Mills County into three supervisor districts, and that there were no nominations for member of the board of supervisors made from either of said districts, and that the nomination and election of appellant was illegal and void, and that by reason of there being no election the incumbent James Greig held over and duly qualified as such and thereafter resigned, and defendant was properly and duly elected as his successor and had qualified as such and was rightfully entitled to the office." Appellant in reply admitted "that the board of supervisors of Mills County had attempted to divide the county into supervisor districts on June 29, 1908; but denied that the same was valid or effective as to the general election of 1908, and did not deprive the nominees of the various political parties of Mills County, who had theretofore been nominated, of their rights to have their names placed upon the official ballot or to prevent the successful candidate at such election from becoming entitled to the office; admitted that Greig was the incumbent and attempted to qualify under claim that he held over as member of the board and thereafter resigned, and that defendant was elected and attempted to qualify as his successor; alleged that the election of the plaintiff was valid, and that after his election and qualification there was no vacancy in said office, and that the attempted qualification of Greig was invalid, and his attempted resignation and the appointment of the defendant Parker as his successor and his attempt to qualify were void and of no force and effect." He also pleaded an adjudication of the matters in controversy in a prior action of *mandamus*,

wherein the court ordered that plaintiff's name be placed upon the official ballot for the November, 1908, election as a candidate for member of the board of supervisors.

The facts are that prior to June, 1908, the county of Mills was entitled to three supervisors elected from the county at large, and at the regular primary election held in June of the year 1908 plaintiff became a candidate for member of the board for the term commencing January 1, 1909, and one Nipp became a candidate for the same office for the term beginning January 1, 1910, and each received the nomination of his party for these positions at the said primary election. Each received his certificate of nomination as provided by the primary law. After the primary was held and the certificates of nominations were issued, the board of supervisors, at a meeting held June 29, 1908, passed a resolution dividing the county into three supervisor districts. Two of these districts were of practically contiguous territory; but the third consisted of a tier of townships extending across the west and halfway across the north and south sides of said county. Plaintiff was a citizen and resident of one of these districts and of the one which, if the subdivision of the county into districts should be held effective for the fall election, would have been entitled to be a member of the board whose term commenced January 1, 1909. As the time for the election approached, it became apparent that the county auditor did not intend to place the names of the nominees at the primary, Robbins and Nipp, upon the official ballot, for the reason that, because of the subdivision of the county by the board, they were not entitled to have their names placed upon the ballot. Plaintiff then brought an action of *mandamus* in the district court of Mills County against the county auditor to compel him (the auditor) to place relator's name upon the official ballot. The auditor pleaded the subdivision of the county and other matters as a defense; but upon trial the action was sustained, and the

auditor was ordered and directed to place relator's name upon the ticket. Nipp's name was also placed upon the ticket, and he and relator were the Republican candidates at large for members of the board of supervisors as before stated. When the votes were canvassed, it was found that relator had a majority of all the votes cast for member of the board and also a majority of the votes cast in the district where he resided, as such district was created by the board after the primary election. Relator qualified as such member and presented himself before the board demanding that he be recognized as a member thereof. His demand was refused, and the board, claiming that there had been no valid election, permitted one Greig, a member whose term would otherwise have expired, to qualify and assume the duties of the office as a holdover member. Thereafter Greig resigned, and the clerk, auditor, and recorder of the county filled the vacancy by appointing defendant Parker, who qualified and assumed the duties of the office and was so acting when this action was commenced.

After a hearing upon testimony and issues joined, the trial court found that "the judgment and adjudication in the *mandamus* suit was a complete and final adjudication of the right of the relator to the office, binding upon the defendant intervener and all citizens, if the court had jurisdiction, but held that the court did not have jurisdiction of the action, because *certiorari* was the proper remedy to overturn the action of the board of supervisors in dividing Mills County into supervisor districts, and also held that the special tribunal referred to in the election law was the sole and exclusive tribunal for determining as to whose name should go upon the official ballot as candidates nominated at the primary election." The appeal challenges these findings, and also the final order dismissing relator's petition. The main propositions relied upon by appellant are: (1) That the judgment in the *mandamus* proceed-

ing, not having been appealed from, is final and conclusive, . and constitutes a complete and final adjudication of all the matters at issue in this case. (2) That the provision of the Code Supplement creating a tribunal to settle contests for party nominations has no application to the facts disclosed by this record, and that *mandamus* is the proper remedy. (3) That the action of the board of supervisors in districting or subdividing the county did not affect the right of the relator to have his name go on the official ballot or prevent his election to the office for which he had been nominated. And (4) that the action of the board in districting or redistricting the county was legislative in character and could not be reviewed by *certiorari,* that *mandamus* was the proper remedy, and that the judgment in the *mandamus* proceeding was final and conclusive.

The statute under which the board of supervisors acted in redistricting or subdividing the county for supervisor purposes reads as follows:

The board of supervisors may, at its regular meeting in June in any even-numbered year, divide its county by townships into a number of supervisor districts corresponding to the number of supervisors in such county; or, at such regular meeting, it may abolish such supervisor district, and provide for electing supervisors for the county at large. Code, section 416.

Such district shall be as nearly equal in population as possible, and shall each embrace townships as nearly contiguous as practicable, each of which said districts shall be entitled to one member of such board, to be elected by the electors of said district. Code, section 417.

In case such division or any subsequent division shall be found to leave any district or districts without a member of such board of supervisors, then, at the next ensuing general election, a supervisor shall be elected by and from such district having no member of such board; and if there be two such districts or more, then the new member or members of said board shall be elected by and from the district or districts having the greater population according

to the last state census, and so on, until each of said districts shall have one member of such board. Code, section 418.

Any county may be redistricted, as provided by the three preceding sections, once in every two years, and not oftener, and nothing herein contained shall be so construed as to have the effect of lengthening or diminshing the term of office of any member of such board. Code, section 419.

Passing, for the present, the point as to whether or not the board acts judicially in districting or redistricting under these sections, we here quote other sections of the statutes which are regarded as material to our inquiry. These are:

Section 1087a1 of the Code Supplement, reading this wise:

That from and after the passage of this act the candidates of political parties for all offices which under the law are filled by the direct vote of the voters of this state at the general election in November (except candidates for the office of judge of the supreme, district and superior courts), for the office of Senator in the Congress of the United States, and for the office of elector of the President and Vice President of the United States, shall be nominated by a primary election, and delegates to the county conventions of said political parties or organizations and party county committeemen shall be elected at said primary election, at the times and in the manner hereinafter provided. The provisions of chapters three (3) and four (4), title six (6), and chapter eight (8), title twenty-four (24), of the Code, shall apply so far as applicable to all such primary elections, the same as general elections, except as hereinafter provided.

Section 411 of the Code Supplement reads as follows:

At the general election in the year 1906 there shall be elected for a term of two years, members of the county board of supervisors to succeed those whose terms were extended one year by the biennial election amendment. At the general election in the year 1906, and biennially there-

after, there shall be elected members of the board of supervisors for a term of three years to succeed those whose terms of office will expire on the first Monday in January following said election; there shall also be elected members for a term of three years to succeed those whose terms will expire on the first Monday in January one year later than the aforesaid date. It shall be specified on the ballot when each shall begin his term of office. No member shall be elected who is a resident of the same township with either of the members holding over (but a member-elect may be a resident of the same township as the member he is elected to succeed), except that, in counties having five or seven supervisors, and having therein a township embracing an entire city of thirty-five thousand inhabitants or over, he may be a resident of the same township; and in no case shall there be more than two supervisors from such township.

Section 1087a24, Code Supp., reads:

In case of a tie vote resulting in no nomination for any office, or election of delegates or party committeeman, the tie shall forthwith be determined by lot by the board of canvassers, or judges of election, as the case may be. Vacancies occurring after the holding of any primary election occasioned by death, withdrawal or change of residence of any candidate, or from any other cause, shall be filled by the party committee for the county, or state, as the case may be, representing the party in which the vacancy nomination occurs.

Section 1100, Code 1897, reads:

Nominations for candidates for state offices may also be made by nomination paper or papers signed by not less than five hundred qualified voters of the state, for county, district or other division not less than a county, but such paper or papers signed by not less than twenty-five qualified voters, residents of such county, district or division; and for township, city, town or ward, by such paper or papers signed by not less than ten qualified voters, resident of such township, city, town or ward; but the name of a candidate placed upon the ballot by any other method shall not be

added by petition for the same office. Each elector so petitioning shall add to his signature his place of business and post office address.

Section 1102 of the Code reads as follows:

If a candidate declines a nomination, or dies before election day, or should any certificate of nomination or nomination paper be held insufficient or inoperative by the officer with whom it may be filed, or in case any objection made to any certificate of nomination, nomination paper, or to the eligibility of any candidate therein named, is sustained by the board appointed to determine such questions as hereinafter provided, the vacancy or vacancies thus occasioned may be filled by the convention, caucus, meeting, or primary, or other persons making the original nominations, or in such a manner as such convention, caucus, meeting or primary has previously provided, if the time is insufficient for again holding such convention, caucus, meeting or primary, or in case no such previous provisions being made, such vacancy shall be filled by the regularly elected or appointed executive or central committee of the particular division or district representing the political party or persons holding such convention, primary, meeting or caucus, and certified as hereinbefore provided. The certificates of nominations made to supply such vacancies shall state, in addition to the facts hereinbefore required, the name of the original nominee, the date of his death or declination of nomination, or the fact that the former nomination has been held insufficient or inoperative, and the measures taken in accordance with the above requirements for filling a vacancy, and shall be signed and sworn to by the presiding officer and secretary of the convention, caucus, meeting or primary, or by the chairman and secretary of the committee, as the case may be.

And section 1087a29, Code Supp., is as follows:

Nothing contained in this act shall be construed so as to prohibit nomination of candidates for office by petition as now authorized by law; but no person so nominated shall be permitted to use the name of any political party au-

thorized or entitled under this act to nominate a ticket by primary vote or that has nominated a ticket by primary vote under the provisions of this act.

Sections 1103 and 1104 of the Code of 1897 read:

All objections or other questions arising in relation to certificates of nomination or nomination papers shall be filed with the officer with whom the certificate of nomination or nomination papers to which objection is made are filed. Those with the Secretary of State shall be filed not less than twenty days, and those with other officers not less than eight days, before the day of election, except that nominations to fill vacancies occurring after said time, or in case of nomination made to be voted on at a special election, objection shall be filed within three days after the filing of the certificate of nomination papers. Objections filed with the Secretary of State shall be considered by the Secretary and Auditor of State and Attorney General, and a majority decision shall be final; but if the objection is to the certificate or nomination papers of one or more of the above named officers, said officer or officers so objected to shall not pass upon the same, but their places shall be filled respectively, by the Treasurer of State, the Governor, and the Superintendent of Public Instruction. Objections filed with the county auditor shall be final; but if the objection is to the certificate or nomination papers of one or more of the above named county officers, said officer or officers so objected to shall not pass upon such objection, but their places shall be filled, respectively, by the county treasurer, the sheriff and county superintendent. . . . When any of the above objections are made, notice shall forthwith be given to the candidate affected thereby, addressed to his place of residence as given in the certificate or nomination papers, stating that objections have been made to his certificate or nomination papers, also stating the time and place such objections will be considered.

Certificates of nomination and nomination papers of candidates for state, congressional, judicial and legislative offices shall be filed with the Secretary of State, not more than sixty nor less than thirty days; those for all other officers, except for cities and towns, with the county audit-

ors of the respective counties, not more than sixty nor less than twenty days; and for the offices in the cities and towns, with the clerks thereof, not more than forty nor less than ten days, before the day fixed by law for the holding of the election. Such certificates and nomination papers thus filed, and being apparently in conformity with law, shall be regarded as valid, unless objection in writing thereto shall be made, and, under proper regulations, shall be open to public inspection, and preserved by the receiving officer for not less than six months after the election is had. Any error found in such papers may be corrected by the substitution of another, executed as is required for an original nomination certificate or paper. . . . Certificates of nomination or nomination papers, nominating candidates for office to be filled by the electors of a county, may be filed with the county auditor at any time not less than five days before the election.

Section 1087a19 of the Code Supplement provides:

On Tuesday next following the primary election in June, the board of supervisors shall meet, open, and canvass the returns from each voting precinct in the county, and make abstracts, thereof, stating in words written at length the number of ballots cast in the county by each political party, separately, for each office, the name of each person voted for and the number of votes given to each person for each different office and shall sign and certify thereto and file the same with the county auditor. Such canvass and certificate shall be final as to all candidates for nomination to any elective county office or office of a subdivision of a county; and the candidate or candidates of each political party for each office to be filled by the voters of any subdivision of a county having received the highest number of votes shall be duly and legally nominated as the candidate of his party for such office; and the candidate or candidates of each political party for each office to be filled by the voters of a county having received the highest number of votes, and not less than thirty-five percentum of all the votes cast by the party for such office, shall be duly and legally nominated as the candidate of his party for such office; and each candidate so nominated shall be entitled to have his name printed on the official ballot to be voted

for at the general election without other certificate, and the board shall prepare and certify a list of the candidates of each party so nominated, separately, and deliver to the chairman of each party central committee for the county a copy of the list of candidates nominated by the party he represents; and shall also prepare, certify and deliver to such chairman a list of the offices to be filled by the voters of a county for which no candidate of his party was nominated, together with the names of the candidates for each of such offices voted for at the primary election and the number of votes received by each of such candidates.

Section 1087a10, Code Supp., reads:

No candidate for an elective county office shall have his name printed upon the official primary ballot of his party unless at least thirty days prior to the day fixed for holding the primary election a nomination paper shall have been filed in his behalf in the office of the county auditor. . . . A candidate for an office to be filled by the voters of any subdivision of a county shall not be required to file any nomination paper or papers. . . . Each and every candidate shall make and file his affidavit stating that he is eligible to the office for the township, county, district or state in which he is and will be a *bona fide* candidate for nomination for said office, and shall file such affidivat with the said nomination paper or papers, when such paper or papers are required. If no such paper or papers are required, then he shall file such affidavit alone, with the county auditor, at least thirty days prior to such primary election, and the filing of such affidavit shall entitle such candidate to have his name printed on the official primary ballot of his party.

These are all of the provisions of the written law which either side claim to be applicable to the case. As much dependence is placed upon the order made in the *mandamus* case, we here quote from the record showing the finding and order of the trial in that case:

The plaintiff also offered in evidence the decree in the action of *Robbins v. Agan,* rendered October 12, 1908,

showing the appearance of the defendants by counsel and the full submission of the case, finding that prior to June 1, 1908, the members of the board of supervisors were elected from the body of the county, and that at the regular primary election of June 2, 1908, the plaintiff was nominated as the Republican candidate for member of the board of supervisors, and so declared and a regular canvass of said primary election returns by the board of supervisors; finding that on June 29, 1908, at an adjourned meeting of the regular session of the board, the resolution set out in defendant's answer was passed, and that, acting under the terms of said resolution, the county auditor refused to place the name of the plaintiff upon the official ballot. The court also found as a conclusion of law that the office for which the plaintiff was nominated was one of the offices to be filled by direct vote of the electors at the general election of 1908, as provided in section 1087-a19, Supplement of the Code; that at the canvass of the primary election returns the plaintiff was duly declared to have received the nomination of the Republican party for such office; and that section 1087a19 provided that such canvass shall be final and conclusive. Further finding that the board of supervisors can not by this resolution annul the effect of the primary election because it would be subversive of the will of the electors as expressed at the primary election, and because it would be contrary to public policy and contrary to the election and spirit of the primary election law. Upon the contention that *certiorari* should have been adopted, the court in its decree said: 'It is not sought to set aside the action of the board in this case. This action is brought to require the auditor to perform a duty which ought to be performed by him if the facts, as also are shown, a duty imposed upon him by law.' Also holding that the plaintiff had such interest as to entitle him to bring the action, and the court held that the action of the board did not excuse the auditor in refusing to perform his duty, and the court in its decree awarded a writ of *mandamus* directing the defendant to place the name of the plaintiff upon the official ballot for the general election of November, 1908, as the Republican candidate for the office of member of the board of super-

visors for the term for which he was nominated at the primary election in June, 1908.

The effect of this decree presents the principal matter of controversy. Some of the propositions involved have already been decided in previous opinions filed. In *Lahart v. Thompson,* 140 Iowa, 298, we said:

The fundamental inquiry in the case thus presented is whether the board of supervisors had the power to discontinue the division of the county into districts, and, if so, whether said order could affect the status of the candidates theretofore nominated and deprive them of their standing as district candidates. As to the authority or jurisdiction of the board to make such order there can be no reasonable doubt. The statute above cited (Code, section 416) expressly provides that the board of supervisors may, at its regular June meeting in any even numbered year, divide its county into as many districts as there are members of the board, or at such regular meeting it may abolish supervisor districts and provide for electing supervisors for the county at large. This statute has never been expressly repealed, nor do we find any other statute since enacted which is so inconsistent therewith as to effect a repeal by implication. The recent enactment authorizing party nominations to office at a primary election, on which statute appellant relies, makes neither direct nor indirect reference to the provision here in question. Its clear purpose is not to change or in any way affect tenure of office or eligibility to office, or to regulate or limit the legislative or *quasi* legislative powers already conferred upon boards of supervisors or other inferior bodies, but simply to provide an appropriate and orderly method for naming candidates for the offices to be voted for at an approaching election. The nomination at a primary election gives the person receiving it no vested interest in the office for which he is named or to any place upon the official ballot which may not be taken away by the state acting through its Legislature or some inferior body to whom the power has been delegated. The office of supervisor is a creature of the statute, as is the delimitation of the territory from which such officer shall be elected. If the

Legislature had been in session on June 6, 1908, and had then enacted in due form a statute abolishing the supervisor district and providing that supervisors should thereafter be elected from the county at large, no lawyer would contend that it thereby exceeded its constitutional powers, or that the operation of such statute could be in any wise controlled or affected by the fact that plaintiffs had already been nominated to such office by their respective districts. If this might have been done by the state Legislature, it could be done with equal effectiveness by the board of supervisors to which that power had been expressly delegated. The effect of the order was to abolish the districts. They no longer existed, and the county auditor was bound to regard that fact in making up the official ballot. From the date of said order the choice of supervisors rested with the electors of the county at large, and not with the electors of separate districts. It follows that, if plaintiffs were entitled to have their names placed upon the ballot at all as candidates for the office of supervisors, it was on the ballot made up for the use of the electorate of the entire county. We do not decide whether the result which counsel deprecates necessarily follows this holding, or whether, the office of supervisor being a county office even where the election is by districts, the nomination of appellants by their districts was not sufficient to entitle them (the districts being subsequently abolished) to a place upon the ballot for the entire county. That which appellants demand to have recognized is the right to have their names placed upon the ballot to be used within the territory constituting their respective districts as said districts existed at the date of the primary, and that they be not placed upon the ballot proper for the county at large. That claim, we are very clear, can not be sustained. They are not here claiming any right or relief as candidates for election by the county at large, and anything we might say upon that subject would be mere *dictum*.

This case settles the contention that the so-called "primary law" repealed section 416 *et seq.* of the Code, and also in effect declares that a redistricting order goes into

effect at once and is not to be postponed until candidates may be chosen at a primary election. It does not decide, however, that nominees selected at a previous primary may not have their names placed upon the official ballot as candidates for members of the board.

1. COUNTIES: division into supervisor districts: when order becomes effective.

In *State v. Hayward,* 141 Iowa, 196, we said:

The first requirement of the primary law is that the candidates of political parties for all offices which under the law are filled by the direct vote of the voters of this state at the general election in November shall be nominated by a primary election. This requirement is mandatory, and the method of nomination provided for in the primary statute is exclusive. It follows that the provision of chapters 3 and 4, title 6, of the Code, so far as they provide methods of nomination inconsistent with the provisions of the primary enactment, were by that enactment repealed by implication. If this be true, the district central committee had no authority under section 1102 of the Code to nominate the relator for the office of Senator for the reason that section 1087a24, in so far as it relates to the matter under consideration, is a substantial re-enactment of the provisions of section 1102 of the Code, and furnishes the only authority in the matter. Section 1087-a24 provides that 'vacancies occurring after the holding of any primary election occasioned by death, withdrawal or change of residence of any candidate or from any other cause, shall be filled by the party committee for the county, district or state, as the case may be, representing the party in which the vacancy nomination occurs.' In our judgment the authority of any party committee is therein limited to cases where nominations have been previously made at the primary, and vacancies have thereafter occurred. This section does not authorize a party committee to make a nomination in the first instance. It is only given power to nominate when the nominee of the primary election is no longer a candidate, and because of such fact a vacancy occurs. *Healy v. Wipf, Secretary* (S. D.) 117 N. W. 521. And no other or greater power was conferred by section 1102 of the Code, and, were we to

be governed by that section in this case, we should be compelled to hold the central committee without the power assumed by it.    Section 1087a26 provides for nominations by convention when there has been a failure for any reason to nominate a Senator at a primary election.    This course was open to the interested parties herein, and they had no right or authority to proceed as they did.

In the same case, in stating the effect to be given section 1087a1 of the Code Supplement and section 1103 of the Code, we said:

The section clearly creates a tribunal for the determination of all questions arising in relation to certificates of nomination or nomination papers, and makes the decision of such tribunal final.  .  .  .  The purpose of the statute is to afford a prompt review of all questions concerning the validity of certificates of nomination or nomination papers; and the provision making the decision final was undoubtedly intended to avoid delay and the complications sometimes incident to general judicial proceedings.    In his discussion of this statute the appellee overlooks its broad language, and is mistaken when he says that the tribunal created thereby can only act when written objections are filed to nomination papers already filed.    Under the construction contended for, no objections could be filed or any question raised until after filing, no matter how incomplete or insufficient the papers offered might be.    In other words, the secretary would be compelled under the appellee's construction to file everything offered, and such a result was clearly not contemplated by the lawmakers.    The secretary evidently refused to file the appellee's papers upon the ground that no legal nomination had been made.    This action might have been questioned or objected to by the appellee in the manner pointed out by the statute, and, he having failed to take such action, the secretary's action must be held final.

As the board of supervisors had undoubted power to district the county after the primaries were held, and did so in this case, the nomination of plaintiff, at the primary elec-

tion, for member of the board at large and not for his district, which was thereafter created, is not

**2. SAME: nomination of supervisors: vacancies: how filled.**

to be regarded as a nomination for the district subsequently created, and it is manifest that there was a vacancy to be filled by the proper authority after the districting of the county. Aside from the judgment and decree in the *mandamus* case, it seems to us that this vacancy should have been filled as provided in section 1087a24 of the Code Supplement—by the party committee. It is doubtful if section 1100 of the Code, providing for nominations by petition, applies; but, as that point is not involved, we shall not now determine it. We have held that section 1102 of the Code, hitherto quoted, is repealed by implication by section 1087a24 of the Code Supplement, and vacancies from any cause are by that section to be filled by the party committee for the county. It is barely possible that under some of the sections quoted and section 1089 of the Code, which provides for nominations by party conventions, a nomination might have been made by a party convention called for that purpose; but, as this was not done, we have no occasion to do more now than suggest a possibility, without in any manner indicating that this course should have been followed. All that need be decided now is that plaintiff was not properly nominated for member of the board from the district which was created by proper authority after the primary was held and after the certificate of nomination was issued. If plaintiff's name had not been printed upon the ballot, he would have no cause to complain. But it was printed thereon by order of the district court in an action properly brought to determine that question, and plaintiff not only received the largest vote cast at the election in the county at large, but also in the district created by the board in which he at that time resided. The question resolves itself down to this: What effect is to be given the judgment and order of the district

court directing that plaintiff's name be placed upon the ballot as a candidate for member of the board of supervisors. It was not ordered placed thereon as a candidate for member of the board from the new district, but as a member at large, although he did receive, at the election, the largest number of votes from his district, as found and determined by the county election board, but the certificate of election was issued to him as a member of the board for the county at large, and not for any particular district. Counsel for appellant contend that the decree of the district court in the *mandamus* case is final and conclusive, and that relator should be found to be elected to the office in virtue thereof. If the trial court had ordered plaintiff's name printed upon the ballot as a candidate for member of the board from the district in which relator resided, there would be much force in the position. But this, as has been observed, was not the order; nor was relator elected to that office.

Counsel for appellee broadly contend, however, and the trial court found, that the district court had no jurisdiction of the *mandamus* proceeding, and that *certiorari*

3. ELECTIONS: mandamus: the placing of name of candidate on ballot.

was the proper remedy. *Certiorari* will lie only when an inferior board or tribunal exercising judicial functions is alleged to have exceeded its proper jurisdiction or is otherwise acting illegally and there is no other plain, speedy, and adequate remedy. Code, section 4154. The writ does not lie to correct a mere error, but only to test the jurisdiction of a tribunal and the legality of its action. *State v. Roney,* 37 Iowa, 30. The proceedings of the board of supervisors in redistricting or districting Mills County for supervisor purposes was largely, if not wholly, legislative in character. True, there were some questions for it to determine, as, for instance, the population of the proposed districts and what was contiguous territory. Perhaps, if these matters had been challenged, a writ of *cer-*

*tiorari* might have been sued out to determine the legality of its action in the premises. But that was not the nature of plaintiff's *mandamus* suit. That suit was brought to compel the auditor to place plaintiff's (relator's) name upon the ticket. Now, the action of *mandamus* may be brought to obtain an order commanding an inferior board or person to do or not to do an act, the performance or omission of which the law enjoins as a duty from an office, trust, or station. When discretion is left to such board or person, the *mandamus* can only compel it to act, but can not control such discretion. Code, section 4341. That *mandamus,* and not *certiorari,* was the proper remedy whereby to procure an order on the auditor to place plaintiff's name on the ballot, is well established by authority. *People v. Board,* 138 N. Y. 95 (33 N. E. 827, 20 L. R. A. 81); *Bennett v. Richards* (Ky.) 83 S. W. 154; *Roemer v. City Canvassers,* 90 Mich. 27 (51 N. W. 267); *Hutchinson v. Brown, Secy.,* 122 Cal. 189 (54 Pac. 738, 42 L. R. A. 232); *State ex rel. v. Cunningham,* 83 Wis. 90 (53 N. W. 35, 17 L. R. A. 145, 35 Am. St. Rep. 27); *Giddings v. Blacker,* 93 Mich. 1 (52 N. W. 944, 16 L. R. A. 402); *People v. Thompson,* 155 Ill. 451 (40 N. E. 307).

The action of the board of supervisors was but incidentally involved. That is to say, it was claimed that it had no power to district or redistrict the county, after the primary election was held, in such a manner as to affect the rights of nominees at large chosen at a primary held before the act of redistricting was performed. The action was against the county auditor to compel him to place plaintiff's name upon the official ballot as a candidate for member of the board. This was clearly to require him to perform a duty enjoined upon him by law, and, unless there be something in the point that the court had no jurisdiction whatever because such matter was intrusted to another tribunal whose jurisdiction was

and is final, there can be no doubt that the action of *man-damus* was properly commenced and prosecuted to a conclusion. So that we are eventually brought down to the exact proposition for decision in this case: Was the district court of Mills County without jurisdiction in the matter because another tribunal or tribunals were created to settle such disputes whose decisions were and are final and conclusive? This is affirmed on one side and denied on the other.

By section 1087a19, Code. Supp., it is provided that the certificate of nomination from the board of supervisors shall be final as to all candidates for nomination to any

4. SAME: cer-
tificate of
nomination:
finality:
judicial
review.

elective county office or office of a subdivision of a county. And by sections 1103 and 1104 of the Code it is provided that all objections arising in relation to certificates of nomination or nomination papers shall be filed with the officer with whom the certificate is to be filed. Objections filed with the county auditor shall be considered by the auditor, clerk, and county attorney, and a majority decision shall be final. Provision is also made for notices, etc., to parties in interest, a hearing, etc., and it is further provided that certificates apparently in conformity to law shall be regarded as final, unless objection be made thereto in writing. Ordinarily, the certificate of nomination issued by the board would be regarded as final, unless objection was filed thereto under sections 1103 and 1104 of the Code. But in the present case the certificate was to the effect that plaintiff had been nominated for the office of member of the board for the county at large, when as a matter of fact there was no such office to be filled at the coming election. As a vacancy was created by act of the board after the certificate was issued, that certificate can not be regarded as controlling. On the other hand, no objections were filed with the county auditor to relator's certificate of nomination, and no notice of a hear-

ing or a hearing was ever had upon the question of his being properly nominated and entitled to have his name placed upon the ticket by the tribunal created for that purpose under sections 1103 and 1104 of the Code before quoted. If plaintiff (relator) had been nominted for member of the board for the district in which he lived, we would have no doubt of his right to maintain the present suit. His right to have his name placed upon the ticket for the election was never questioned by any one save the auditor, and this was no doubt for the reason that he had never been nominated for the office which the electors were to fill. The board of supervisors issued to relator a certificate to the effect that he had been nominated for the office of the member of the board at large. After that date the board dispensed with that office by creating districts as it had a right to do, and plaintiff (relator) was never nominated for that office. No one ever filed any objections to his nomination papers; but the county auditor undoubtedly held that, as plaintiff had not been nominated for member of the board for one of the districts, his name should not go upon the official ballot. The trial court took a different view, and held that plaintiff's name should have gone upon the ticket as a candidate for member of the board at large, and it was so printed upon the official ballot. Plaintiff was then elected to the office of member of the board, and incidentally he had a majority of the votes in the district where he resided. Had relator been nominated for an office which was to be filled at the coming election, and objections had been filed with the county auditor, and that official had given notice, and a hearing had been had, or had the case been one where objections might have been filed, but were not, perhaps under the doctrine of the *Hayward* case *supra,* the conclusion reached by the auditor or by the auditor, county attorney, and clerk would have been final, although we are not disposed to carry the doctrine of the *Hayward* case any further than the

facts will justify. If no objections were filed, and relator had been nominated for the office to which he was thereafter elected, it is doubtless true that the courts would have no right to interfere in the matter. But the case does not seem to present this aspect.

Plaintiff and relator's nomination was not for member of the board from a given district, but for member of the board generally, and the trial court in the *mandamus* case did not find that he had been nominated for the district in which he now claims to have been elected. The holding was that his name was to go on the ticket as a candidate for member of the board at large, and his name so went upon the ticket. He was elected to that office, but when the election was held there was no such office to fill. It is manifest that a court can not create an office by a declaration and decree that a name shall go on a ticket for that office. To give such an effect to a decree would be to invest courts with the legislative power of creating an office. Plaintiff, as has been observed, was not a candidate for member of the board from a given district, and the mere fact that he claimed to have received a majority of votes therein does not entitle him to hold the office. Had he received a majority of the votes of the county—which he unquestionably did—he would have been elected to the office for which he ran, although he may have been defeated in his particular district. The *mandamus* decree is not conclusive, then, of plaintiff's right to hold an office to which he was not elected, and for which he was not a candidate. Had he been a candidate for office in a supervisor district, we should have a much more difficult question in view of the decision in the *mandamus* case. We feel quite clear that if this had been the situation the decree in the *mandamus* case would have been conclusive. The decision of the county officials is only conclusive when objections are filed and they are called upon to act. If no objections are filed, as provided in the section of the

Code quoted, we think it quite clear that a court might by *mandamus,* compel the auditor to place the name of a candidate who held a certificate of nomination upon the ticket. This would be a duty devolving upon him in virtue of his office. The case is peculiar in its facts. Here a vacancy was created after the primary election was held. Plaintiff (relator) was never nominated for that vacancy. He went into court, however, and secured an order placing his name upon the ticket for member of the board of supervisors at large. He was voted for as such by all the electors and secured a certificate of election, having received a large majority of the votes. He also had more votes than any other candidate in the district where he resided; but he was not a candidate for that office, and the district court did not so hold. This decision is, of course, upon the peculiar facts of the case, and is sustained, we think, by the statutes quoted and the rules heretofore announced. Reliance is placed upon *State v. Hayward, supra;* but we do not regard it as controlling. What is there said must be considered with reference to the peculiar facts of that case. There are no adjudicated cases exactly in point; but the following give some support to our conclusions: See *Carl v. Knott,* 16 Iowa, 379; *Merrill v. Tobin,* 82 Iowa, 533; *McCullough v. Connelly,* 137 Iowa, 682.

But relator's counsel strenuously insist that in reaching the conclusion that it did in the *mandamus* case the trial court held that the redistricting resolution was ineffective, and that this conclusion is final and can not be questioned in this proceeding. It is doubtless true that the court hearing the *mandamus* case, as a basis for its conclusion that plaintiff's name should go upon the ticket, found that the redistricting resolution was either invalid, or that its operation should be postponed until after the election to be held in the fall of that year. This, however, was nothing more than an argument or reason given for ordering the county

5. SAME judgments: conclusiveness.

auditor to place plaintiff's name upon the ticket. It amounted, in our opinion, to nothing more than a placing of plaintiff's name upon the ticket voluntarily and without action brought. Surely, if the county auditor had voluntarily placed plaintiff's name upon the ticket because he thought that it was entitled to go there, his act in so doing would not entitle plaintiff to hold an office to which he was not elected and for which he was not a candidate. Neither the courts nor a county auditor, nor both together, can create an office and so order that one may be elected thereto. No one but the Legislature, or somebody acting under its authority, can create an office. In this case the board created an office; that is to say, an officer who could be elected by only a certain part of the electors. To fill that office one had to be a candidate therefor. If he was not such candidate, but was a candidate for some other position or a position to be filled by the electors of a given locality, he can not, after being elected to that office, claim that he is entitled to another. The question of redistricting was only incidentally involved in the *mandamus* proceeding, and, as we have said, the only real question in that case was: Should plaintiff's (relator's) name go upon the ticket as a candidate for member at large of the board of supervisors? The trial court held that it should. It now turns out that there was no such office to be filled, and plaintiff is in no position to say he was elected thereto. As already observed *mandamus* is not the proper remedy for challenging directly the action of the board of supervisors in passing the resolution for districting the county. But it was a proper remedy to compel the auditor to do his duty. As *mandamus* was not the proper remedy whereby to challenge the validity of the resolution for districting the county, no one was bound by the *mandamus* proceeding, save the auditor. He was bound, and he complied with the order of the court. It now turns out, however, that, while plaintiff's name went upon the ticket, he

was not a candidate for an office to be filled by the electors at large, and, although he had a majority of the votes and a certificate of election, it was for an office which had been properly abolished, and, as there was no office to fill, plaintiff was not elected to one. We have said perhaps more than we should upon this question; but as it is the turning point in the case, and counsel place great reliance thereon, attempt has been made to show the ineffectiveness of the judgment in the *mandamus* case as a former adjudication conclusive on every one. That there is a manifest distinction between a *mandamus* proceeding and an action of *certiorari* in their effect upon others than the parties to the action is already sufficiently pointed out, and it is fundamental, of course, that courts can not create offices or declare persons elected thereto who have never been candidates therefor.

The decree dismissing the petition seems to be correct, and it must be, and it is, *affirmed*.