[S. F. No. 6346. In Bank.—October 4, 1912.]

## ANDREA SBARBORO et al., Petitioners, v. FRANK C. JORDAN, as Secretary of State of the State of California, Respondent.

ELECTION—CANDIDATES FOR PRESIDENTIAL ELECTORS—NOMINEES OF REPUBLICAN PARTY—REPUDIATION OF PLATFORM AND CANDIDATES OF NATIONAL PARTY.—Nominees for electors of president and vice-president of the United States to be voted for at the general election of November 5, 1912, who were nominated as such by a properly constituted convention of the "Republican Party," held at the time and place appointed by law therefor, and composed, as required by the act of 1911 (Stats. 1911, Ex. Sess., p. 83), of the so-called "hold-over" state senators belonging to such party and the nominees of such party for state senator and assemblyman throughout the state, selected at the direct primary election of such party held on September 3, 1912, are the proper candidates of such party for that office, and entitled to have their names appear as such on the official ballot to be used at such general election, notwithstanding the convention which nominated them had repudiated the platform and

nominees for president and vice-president of the United States of
the National Republican Convention, and had declared its intent to
support the national platform and candidates for such offices of a
new party known as the Progressive party, and they themselves had
been pledged to vote as electors against the nominees of the National
Republican party for president and vice-president.

ID.—CONVENTION OF REPUBLICAN PARTY—RIGHT OF MEMBER TO VOTE.—
Assuming the validity of the act of 1911, no qualified member of
the convention lost his legal right to participate therein by reason
of his attitude or vote on any question coming before the conven-
tion, whatever might be his motive therein.

APPLICATION for a Writ of Mandate directed to the Sec-
retary of State of the State of California.

The facts are stated in the opinion of the court.

Clayberg & Rose, Samuel M. Shortridge, Leroy A. Wright,
and Walter R. Bacon, for Petitioners.

U. S. Webb, Attorney-General, for Respondent.

THE COURT.—This is an application by A. Sbarboro and
twelve others for a writ of mandate requiring the secretary
of state to place their names on the general election ticket to
be used at the general election on November 5, 1912, as the
candidates of the "Republican Party" for electors of presi-
dent and vice-president of the United States, and to omit from
said ticket the names of thirteen other persons who claim to
be and whose names have been certified to said secretary of
state as the candidates of such Republican Party for such
office. The secretary of state, it is alleged, will place the
names of such other persons on such ticket as such candidates,
instead of the names of these petitioners, unless this court
orders otherwise.

The facts upon which petitioners rely are fully set forth
in their petition, and the question is whether upon these facts
they are entitled to the relief sought.

Under our law for the nomination of candidates for elec-
tors of president and vice-president of the United States by
political parties (Stats. 1911, Ex. Sess., p. 83), the candi-
dates of any such party at the next election are required to
be nominated by a convention composed of the so-called "hold-

over'' state senators belonging to such party, and the nomi-
nees of such party for state senator and assemblyman through-
out the state, selected at the direct primary election of such
party held on September 3, 1912.  Such a convention of the
''Republican Party'' was held at the time and place appointed
by the law therefor, 114 persons participating therein as
members.  It is not disputed that all the persons attending
said convention and participating as members in its proceed-
ings were entitled under the law to which we have referred
to participate therein as members, each of them being either
a ''hold-over'' senator elected as and registered as a member
of the ''Republican Party,'' or a nominee of such party for
senator or assemblyman.  We say this is not disputed, for
although it is alleged that of the 114 persons participating
as members in said convention, only thirteen were ''Repub-
licans'' and the remaining 101 were not affiliated with the
Republican party, and were mere intruders in the conven-
tion, it is subsequently alleged that each of said 114 persons
who were nominees for the senate and assembly (being 100
of the 114) were nominated at the primary election held
September 3, 1912, as Republicans, and that each had duly
made and filed the affidavit required by law in which he stated
that the name of his party is the Republican party, and that
he intended to affiliate with said Republican party and vote
for a majority of the candidates of said party at the next
ensuing general election.  There is no pretense that the same
is not true as to the fourteen ''hold-over'' senators participat-
ing.  Each and all of those participating were qualified to
participate in the convention as Republicans, so far as any
test prescribed by the law is concerned.  The sole basis of any
claim that 101 of the persons participating as members of
said convention were not affiliated with the Republican party
and were disqualified from acting as members of the conven-
tion, is substantially that as members of such convention they
repudiated the action of the convention of the National Re-
publican party held at Chicago in June of this year by adopt-
ing a resolution directly and positively repudiating the plat-
form and nominees of such National Republican convention,
and declaring it to be their intent and purpose to support the
national platform and candidates of a new party known as the
Progressive party, and by nominating as candidates for elect-

ors of president and vice-president of the United States, persons pledged in the event of their election to vote for the nominees of said Progressive party for president and vice-president of the United States. Such a resolution was, in fact, adopted by the votes of said 101 members, against the protest of the remaining thirteen members, and by the vote of the same 101 members, thirteen candidates for elector of president and vice-president of the United States were nominated as the candidates of the Republican party for that office, who are pledged to vote against the nominees of the National Republican party for president and vice-president. The thirteen protesting members thereupon organized as a convention, claiming to be the only rightful members of the Republican convention called for by the law, adopted a platform ratifying the platform adopted by the National Republican convention at Chicago, and nominated these petitioners as the Republican candidates for electors of president and vice-president.

No question is raised by this proceeding as to the constitutionality of the statute prescribing the manner of nomination by political parties of candidates for elector of president and vice-president of the United States. The petitioners seek the relief asked by them solely as the alleged nominees of the convention provided for by such statute. They set forth no other alleged source of right or title as candidates of the Republican party for such office, and they do not allege any matter entitling them to oppose the printing on the general election ticket of the names of the other set of nominees of said convention, as the candidates of the Republican party, in the event that they, petitioners, are not the rightful nominees under said statute. For all the purposes of this proceeding, then, the statute must be regarded as being free from objection on the ground of violation of any constitutional provision.

Assuming the statute to be in all respects valid, we are satisfied that the petitioners cannot prevail in this proceeding. There is no ground for holding that any member of the convention lost his legal right to participate therein by reason of his attitude or vote on any question coming before the convention. Each member measured fully up to the statutory requirements for election to the convention and participation in the proceedings thereof, and his legal right to continue

therein as a member to the adjournment of the convention could not be affected by his attitude or vote on any question, whatever might be his motive therein. In this respect, he occupied no different position in principle from that occupied by a delegate to a nominating convention under our old system of nomination of candidates. As to such a convention, we have direct authority in this state, in the case of *Hutchinson* v. *Brown,* 122 Cal. 189, [42 L. R. A. 232, 54 Pac. 738]. A state covention of the People's party, then a regular political party of this state, had been regularly called and convened for the nomination of candidates of such party for state officers. There were about 160 delegates actually present. By a majority vote a plan of fusion with the Democratic and Silver Republican parties was agreed upon, and Judge James G. Maguire, a Democrat, was nominated as the People's party candidate for governor. Fifty-three delegates protested against this proceeding, and withdrew and at once organized another convention as the real People's party convention and nominated a full state ticket. The majority completed their ticket. Each faction presented its ticket for filing to the secretary of state as the regular People's party ticket, and the question before this court was, which was entitled to be filed as the ticket of the People's party? It was unanimously held that the ticket nominated by the majority of such convention was the regular People's party ticket, and it was said, among other things, Chief Justice Beatty writing the opinion:

"It is conceded that both certificates are regular in form, duly authenticated, and that all the conditions of the statute relative to their presentation have been fully complied with. The only question is, which emanated from the regular and authorized convention of the party.

"Upon this point we are satisfied that the respondent erred in his conclusion. It is clear that the full convention was regularly called and organized, and that only about one-third of its members withdrew after the nomination of Judge Maguire. The withdrawal of a minority of the delegates present did not dissolve the convention or destroy its identity. It remained as before, the people's convention, with full authority to nominate a ticket to be voted for at the election.

"The fact—if it be a fact—that some or all of the delegates who remained were violating pledges or sacrificing party interests in nominating Judge Maguire and adopting the plan of fusion, presents a question with which neither the secretary of state nor the court has the slightest concern. That is a matter to be settled between them and their constituents. *Delegates to political conventions are no doubt trustees in a large sense of the word, but they discharge a trust with which the courts do not meddle. They obey or disobey instructions as they see fit, and the only remedy for their disobedience is the censure of the people expressed at the polls. This is true, at least so far as the ballot law is concerned.* All the filing officer has to determine is whether the certificate offered for his acceptance emanates from the regular convention of the party. It is no concern of his whether the delegates to the convention have nominated members of their own party or of other parties, whether the nominees are there to stay or to be taken down." (The italics are ours).

The views thus announced are applicable here, and they obviously dispose of petitioners' application. They are not the nominees of the Republican party convention for electors, but are simply the choice of a minority thereof, the thirteen others whose names they seek to prevent respondent from placing on the ticket having been legally nominated by a majority vote of such convention as the candidates of the Republican party of this state for that office.

For the reasons stated, the court from the bench ordered that the application for a writ of mandate be denied.