## TURNER v. ALLEN. (No. 1027.)*

(Court of Civil Appeals of Texas. Beaumont. July 14, 1923. Rehearing Denied Oct. 10, 1923.)

1. **Elections ⬮285(1)—Petition held one to contest an election, and not a petition in action for an office.**

Petition designating the parties as contestant and contestee, alleging facts conferring jurisdiction on district court to hear and determine a statutory election contest, *held* a petition to contest an election, and not a petition in a suit for an office, notwithstanding amendment alleging that the office was one of greater value than $500, and that contestant was entitled to the emoluments of the office, especially in view of the fact that no proof was offered to sustain such allegation, and that the parties and the trial court treated the proceeding as an election contest.

2. **Pleading ⬮34(1)—Petition construed as a whole in determining nature of action.**

In construing a petition with reference to whether it is a petition to contest an election or a petition in a suit for an office, the petition must be construed as a whole.

3. **Elections ⬮269—Distinction between "election contest" and "suit for an office" stated.**

A proceeding to contest an election and a suit for an office are separate and distinct proceedings; the election contest being a special statutory proceeding requiring strict compliance with the statutes in order to confer jurisdiction on the district court, and the suit for an office being an ordinary civil action in the nature of any other similar action.

4. **Elections ⬮298(1)—Inquiry in election contest limited to matters which happened on day of election, and which pertained strictly to the election.**

In an election contest in the district court under Rev. St. arts. 3062, 3063, the inquiry is confined to matters which happened on the day of election, and which pertain strictly to the election, such as the casting and counting of the ballots and the actions and conduct of the election officers.

5. **Elections ⬮289—Contestant's petition held to admit that contestee had received more votes in precinct as re-established by order of commissioners' court.**

In an election contest involving the question of whether the contestant or contestee was elected county commissioner of a certain precinct, contestant's petition *held* to admit that contestee received more votes than contestant in the precinct as re-established during the interval between the primary and general elections.

6. **Counties ⬮57—Order of commissioners' court re-establishing precincts not subject to collateral attack.**

Under Const. art. 5, § 18, the commissioners' court is authorized to change and re-establish county commissioners' precincts at any time they deem it to be for the convenience of the people, and its action in so doing, when ex-ercised in a proper proceeding, is not void, and will not be attacked or impeached collaterally, though it amounts to a gross abuse of the court's discretion, and though it in effect constitutes a legal fraud upon persons who may be affected by the court's action.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Election contest by T. A. Allen against W. O. Turner. Judgment for contestant, and contestee appeals. Reversed.

J. A. Harrison, of Beaumont, for appellant.
E. M. Chester, of Beaumont, for appellee.

PER CURIAM. This is an appeal from a judgment of the district court of Jefferson county (Fifty-Eighth judicial district), by the terms of which the appellant, W. O. Turner, was ousted from the office of county commissioner of precinct No. 4 of Jefferson county, and the appellee, T. A. Allen, was adjudged to be entitled to said office. The controversy between the parties grew out of the following facts:

At the Democratic primary election held in Jefferson county in July, 1922, for the nomination of state, county, and precinct officers, appellant, Turner, and appellee, Allen, were opposing candidates for the nomination to the office of county commissioner of precinct No. 4 in said county. The result of the primary election was that Turner got a total of 701 votes and Allen got a total of 910 votes making Allen's majority over Turner 209 votes. Thereafter Allen was duly and legally declared the Democratic nominee for the office of county commissioner of precinct No. 4, and his name was printed on the ticket to be voted at the general election following.

The commissioners' court, at its regular August term, following the primary election, acting upon a resolution offered by Turner, who was then a member of said court, made and caused to be entered of record an order changing and re-establishing the boundaries of commissioners' precincts Nos. 1 and 4, and by such change considerable territory that was theretofore included in commissioner's precinct No. 4 was placed and included in commissioner's precinct No. 1 as re-established, and this territory so placed in commissioner's precinct No. 1 included Allen's residence, thereby excluding his residence from commissioner's precinct No. 4, where it was at the date of his nomination for said office. Also by said order of the commissioners' court the greater portion by far of election precinct No. 4, as to population, was excluded from commissioner's precinct No. 4 as re-established, and was included in commissioner's precinct No. 1 as re-established. And also by said order other election precincts, which before the order were in commissioner's precinct No. 4, were excluded therefrom,

and were included in commissioner's precinct No. 1 as re-established, but no point is before us as to the change made by the order touching such other election precincts.

At the general election in November following, Allen's name was printed on the official ballot as the Democratic nominee for county commissioner of commissioner's precinct No. 4 of Jefferson county, and he was voted for as such by some of the voters in all of the election precincts within commissioner's precinct No. 4 as re-established, but some of the voters in such precincts erased his name and wrote instead thereof, as their choice for county commissioner of precinct No. 4, the name of appellant, W. O. Turner, and returns of the results of the election in such election precincts were duly made. But a number of the voters residing in election precinct No. 4 as it was situate and bounded at the date of the primary election voted for Allen in the general election, notwithstanding the order of the commissioners' court which had taken that election precinct out of commissioner's precinct No. 4, and included it in commissioner's precinct No. 1, and all such votes were cast for Allen, and the managers of the election in such precinct counted such votes for Allen and made returns of the result accordingly.

When the commissioners' court met to canvass the result and estimate the returns of the general election, and to declare the result thereof in Jefferson county, it canvassed and estimated the returns made by the managers of the election in the several election precincts situate in commissioner's precinct No. 4, as established by the court's order at the August term preceding, but declined to estimate or consider the returns made by the managers of the election in election precinct No. 4, in so far as such returns related to the office of county commissioner of precinct No. 4, for the reason, as claimed by them, that they knew that the voters who cast the votes shown by such returns did not reside in commissioner's precinct No. 4 as re-established by the court's order in August prior to the general election, and that therefore such votes could not be legally counted in determining the result of the election for commissioner of precinct No. 4, and that the court could not legally estimate and consider such returns in declaring the result of the election for commissioner of precinct No. 4. These rejected returns from such precinct No. 4 showed 205 votes for Allen and none for Turner.

After having declined to estimate and consider the returns from election precinct No. 4, as above stated, in so far as the same related to the office of county commissioner of precinct No. 4, the court proceeded to estimate and consider the returns from all other election precincts situate in commissioner's precinct No. 4 as re-established, and declared the total result as between Turner and Allen to be 74 votes for Turner and 38 votes for

Allen. Thereafter the county judge of Jefferson county issued to Turner a certificate of election to the office of county commissioner of precinct No. 4, Jefferson county, and he duly qualified as such officer.

Allen never at any time between the date of the commissioners' court order re-establishing commissioners' precincts Nos. 1 and 4 and the day of the general election took any steps of any character whatsoever to prevent that order from being given effect, nor was the order attacked by any one at any time by any character of action or suit or proceeding, legal or equitable, until after the general election, and the result thereof was declared, as above stated. Within 30 days after the commissioners' court had declared the result of the election for county commissioner of precinct No. 4, as above shown, Allen caused to be prepared and served upon Turner a written notice that Allen would contest the result of the election as declared by the commissioners' court, and this written notice contained a full and complete statement of the grounds upon which Allen intended to contest the election as against Turner. This notice and grounds of contest complied fully with the statutory provisions relating to contested elections in this state, and its sufficiency was not attacked or questioned in any respect by Turner. Thereafter, and within the time prescribed by article 3057, Revised Statutes of Texas, the contestee, Turner, filed his bond as contestee in the sum of $7,200 in favor of the contestant, Allen. Thereafter, on March 24, 1923, Allen, following up the notice of contest, filed his petition of contest in the district court of Jefferson county, and on the same day the same was presented to Hon. George C. O'Brien, judge of said court, who made an order setting such contest for hearing and trial on April 16th following, directing in such order that a copy of same be served on contestee, Turner.

In view of the fact that one of the principal legal questions involved on this appeal relates to the character of this proceeding, we deem it best to let this opinion reflect in full the contestant's pleading on which the judgment in this case is based. The original petition of contest, which was filed March 24, 1923, after giving the style of the case and the court in which pending, was as follows:

"Your petitioner, T. A. Allen, hereinafter called contestant, complains of W. O. Turner, hereinafter called contestee, and shows to the court the following, to wit:

"(1) Contestant and contestee both reside in Jefferson county, Tex.

"(2) That heretofore, on, to wit, the 13th day of September, 1920, the commissioners' court of Jefferson county, by an order duly made and entered of record, established the boundary lines of the commissioners' precincts of said county, and that precinct No. 4, as established by said order, included within its

boundaries all that portion of the city of Beaumont known as South Park, which includes voting precinct No. 4, in which voting precinct said Allen now lives and lived at the times hereinafter mentioned. That, in pursuance of the laws of the state of Texas, a Democratic primary election was held on the 22d day of July, 1922, to nominate a candidate for said party for the office of county commissioner for said precinct No. 4 as the same was then bounded and established. That the said W. O. Turner and the said T. A. Allen were both candidates, and the only candidates, voted on at said primary for said nomination, and both took the pledge to support, in the general election, the nominees of said primary. That in said primary election the said T. A. Allen received a majority of all the votes polled, and was duly nominated according to law, and his name was properly certified to the county clerk of Jefferson county as the Democratic candidate for commissioner from precinct 4 as the said precinct then existed, and that the county clerk, in accordance with the statutes of Texas, caused the said T. A. Allen's name to be printed upon the official ballot for the general election held November 7, 1922, as the Democratic candidate for commissioner of precinct No. 4. That the said primary election was provided for by the statutes of Texas and was duly ordered and held in accordance with said statutes, and that the said T. A. Allen's rights became fixed by law, when he received the nomination in said primary election, to have his name printed upon the official ballot as the Democratic candidate for election to the office of county commissioner for precinct No. 4, as the same existed at the date of said primary, and to have all the votes polled for him at the election held November 7, 1922, within the boundaries of said precinct No. 4 as the same existed at the date of said primary, counted for him, and, having received the highest number of votes cast for commissioner of said precinct No. 4, he, the said T. A. Allen, was duly elected commissioner for said precinct No. 4, and is entitled to a certificate of election and entitled to qualify and hold said office and receive the emoluments thereof.

"(3) That in said primary election the said T. A. Allen received overwhelming majorities over the said W. O. Turner in voting precincts Nos. 4, 3a, and 2a, which were then included in commissioner's precinct No. 4, except precinct 3a, which was partly in commissioners' precincts 1 and 3 as the same existed on said date, and received a large majority of all the votes cast for commissioner in said commissioner's precinct No. 4. That in said primary election the said W. O. Turner received a majority of the votes cast for commissioner in voting precincts Nos. 11, 12, 13, and 19, in each of which precincts there are only a small number of qualified voters, and the said W. O. Turner lives in voting precinct No. 11.

"(4) That the said W. O. Turner was elected commissioner of precinct No. 4 at the general election held in November, 1920, and in said primary election was a candidate for the Democratic nomination to succeed himself. That soon after said primary election, and after the said W. O. Turner had been defeated by the said T. A. Allen for said nomination, the said W. O. Turner entered into a conspiracy with the other members of the commissioners' court to defraud the said T. A. Allen of his rights conferred upon him by law, and to fraudulently prevent him from receiving a certificate of election, in the event he received sufficient votes in the general election to elect him to the office of commissioner of precinct No. 4, and to deprive him of the emoluments of said office, and to fraudulently prevent the qualified voters of said precinct No. 4 from electing the candidate of their choice to said office, and further conspired to fraudulently bring about the election of the said W. O. Turner. That, in furtherance of said fraudulent scheme, and for the purpose of carrying out the same, the said W. O. Turner, on the 30th day of August, 1922, introduced a resolution before the commissioners' court to change the boundaries of commissioners' precincts Nos. 1 and 4, so as to greatly reduce the size, population, taxable values, and voting strength of precinct No. 1, and changing the said boundaries in such way as to exclude the residence of the said T. A. Allen from commissioner's precinct No. 4, and include the same in commissioner's precinct No. 1 and excluding voting precincts Nos. 2a, 3a, and 4 from commissioner's precinct No. 4, and including them in commissioner's precinct No. 1. That the voting precincts so excluded from commissioner's precinct No. 4 are the precincts in which the said Allen so overwhelmingly defeated the said Turner in the primary election, and that the voting strength of said voting precincts so excluded is far greater than the combined voting strength of all the voting precincts remaining in said precinct No. 4, and that the population and taxable values of the territory so excluded from said precinct No. 4 is far greater than the population and taxable values remaining in said precinct as the same was proposed in said resolution. That in the said primary election the said Turner received a majority over Allen of the small number of votes cast within the new boundaries as proposed. That upon the reading of said resolution the said Turner moved the adoption of same, and Commissioner Latimer seconded the motion, and the same was adopted by the unanimous vote of all the members of the court present; Commissioner Landry not present. That immediately after the adoption of the said resolution the said Turner, notwithstanding his defeat in the primary election and his solemn pledge to support the said T. A. Allen, the duly and legally nominated candidate of said primary, and after having violated the trust and confidence reposed in him by the people two years previous thereto, became a candidate to succeed himself as commissioner of precinct No. 4 as established to suit his purpose by said resolution, knowing full well that, should the said Allen receive a majority of the votes polled in said precinct No. 4 as changed by said resolution, the commissioners' court of which he was a member would refuse the said Allen a certificate of election on the ground that he did not reside in said commissioner's precinct as established by said Turner's resolution. That in furtherance of said fraudulent scheme the said Turner, prior to the general election, for the purpose of influencing the votes within the newly established boundaries of said precinct 4, employed a large number of the voters therein, at the county's expense, to do road work.

"(5) That at the election held on November

7, 1922, the said Allen received a large majority of the votes cast for commissioner within the boundaries of precinct 4 as the same existed before the passage of the said Turner resolution, but the said Turner, as planned by him, received a majority of the votes cast for commissioner in the precinct as changed by his resolution for his special benefit. That, notwithstanding the said Allen was elected by a large majority over the said Turner, the commissioner's court wrongfully and fraudulently, for the purpose of aiding the said Turner, and wholly disregarding the will of the people, excluded all the votes cast for Allen in voting precinct No. 4, and issued a certificate of election to the said W. O. Turner. A large number of votes were cast for Allen in voting precincts 2a and 3a, but were not counted by the election judges.

"(6) That, although the Constitution and statutes of the state of Texas empower the commissioners' court of each county to change the boundaries of the various precincts from time 'to time to suit the convenience of the people, it was not contemplated that they would abuse their discretion and violate the trust reposed in them by wholly disregarding the convenience of 'the people, the wishes of the people, and the best interests of the county by using the power given them to defeat the law, the ends of justice, the will of the people, and to use the same solely for the purpose of promoting political trickery.

"(7) That it was and is contemplated, and was and is the purpose of the Constitution and statutes, that the commissioners' court will, in exercising the power reposed in it to change the boundaries of commissioners' precincts, so arrange the said precincts as to equalize them, as nearly as possible, in population and taxable values, and, when so adjusted, that the voting precincts will be changed, from time to time, to conform to the commissioners' precincts, and to suit the convenience of the people.

"(8) That as the commissioners' precincts existed prior to the said Turner resolution precinct No. 1 had a much larger population, a much larger taxable value, than any other precinct in the county. That under the Turner resolution, as the boundaries now stand, commissioner's precinct No. 1 is larger in area than any of the other commissioners' precincts, and has more than 60 per cent. of the entire population of the county living within its bounds, and has over one-half of the taxable values in it. More than one-half of the people, paying over one-half of the taxes, occupying more than one-third in area of the entire county, elects only one of the four commissioners.

"(9) That the said Turner resolution states as the purported reason for so changing the boundaries of commissioners' precincts Nos. 1 and 4 that the said boundary between them conflicts with the boundaries of certain voting precincts, and causes confusion among the voters, and disfranchises some voters to vote for commissioner. That said purported reason was not the true reason for said change, as it would have been just as easy and far more convenient for the people and voters and would have more nearly equalized precincts 1 and 4 to have so changed the boundary as to include the voting precincts in conflict with the said boundary wholly within commissioner's precinct 4, and excluded them from commissioner's precinct 1, and in so doing it would not have excluded the residence of the said Allen, and voting precincts Nos. 2a, 3a, and 4 from said commissioner's precinct 4. That the true reason for said change in boundaries was, as hereinbefore alleged, a fraudulent scheme to deprive the said Allen of the rights conferred upon him by law as the nominee of the Democratic party for commissioner of precinct No. 4, and to deprive the people of the right conferred upon them by law to elect the said Allen to the said office, and was for the purpose of enabling the said Turner to be re-elected to said office.

"(10) The said T. A. Allen charges as grounds for contest, that the order of the commissioners' court of the 30th day of August, 1922, is null and void, because the same was a flagrant and gross abuse of the discretion of the court; that the said order was arbitrarily made, and was not for the convenience of the people, but, on the contrary, was solely for the political convenience of the said W. O. Turner, and was detrimental to the welfare of the county, in that it discriminates against a majority of the voters and taxpayers; that the same was a fraud upon the people and upon the said T. A. Allen. Further, that the order is null and void because the commissioners' court has no right or power to so change the boundary of a precinct so as to exclude a large portion thereof after a primary election had been duly called and held in the manner provided and required by law and a candidate nominated by the qualified voters of said precinct for commissioner thereof, especially when the change so made will deprive the nominee of his rights and deprive the people of the precinct as it existed upon the date of said primary of the right to elect the candidate of their choice to said office; that the said T. A. Allen received at the said election, in said commissioner's precinct No. 4, as it legally exists, 243 votes for commissioner, and that the said W. O. Turner received 74 votes, and C. A. Place received 23 votes; therefore the said Allen was duly and legally elected to said office, and the certificate of election issued to the said W. O. Turner is null and void.

"(11) Contestant further shows to the court that on the 11th day of December, 1922, he caused to be prepared a notice of contest, stating therein his grounds for contest, and caused the same to be served upon the contestee upon the 12th day of December, 1922, the same being within the time prescribed by law, a copy of which said notice, together with the sheriff's return thereon, also a copy of contestee's reply thereto, are filed herewith and made a part of the record in this cause.

"Wherefore, premises considered, contestant prays that the court make and enter an order setting this contest for hearing, and that a copy thereof be served upon the contestee, and that upon a hearing hereof the order of the commissioners' court made and entered on the 30th day of August, 1922, changing the boundaries of the commissioners' precincts 1 and 4, hereinbefore complained of, be declared null and void, and that the votes cast for contestant in voting precinct No. 4, which were excluded by the commissioners' court, be declared legal

votes for contestant, and that the contestant be adjudged to have been duly and legally elected to the office of county commissioner for said commissioner's precinct No. 4 of Jefferson county, Tex., and for such other and further relief, both general and special, as he may show himself entitled to receive, at law or in equity."

The contestee, Turner, filed his answer and reply to, the original petition of contest on April 13, 1923, which contained a general demurrer, six special exceptions, a general denial, and he further specially denied that the order of August 30, 1922, changing the boundaries of commissioners' precincts Nos. 1 and 4, was arbitrarily made, and denied that the court, in making the same, abused its discretion in the matter, and denied that the order was made for the purpose of defeating Allen in the general election, and also denied that it was made for the political convenience of Turner, or any one else, and specially alleged that such precincts were re-established and changed for the convenience of the people, as the commissioners' court considered it, and that there was no fraudulent purpose whatever on the part of the commissioners' court in making such order, and that the same was valid and binding, and could not be and was not subject to collateral attack or impeachment in this proceeding.

Thereafter, on April 16th, contestant, Allen, filed his first amended petition of contest, which, as to style, form, and substance, was exactly the same, word for word, and line for line, as his original petition of contest, copied above, with the exception that in paragraph 11 of the amended petition for contest the following allegations of fact were made, which were not in his original petition of contest, to wit:

"That contestant was duly and legally elected to said office and is entitled to said office and the fees and emoluments thereof. The said W. O. Turner has wrongfully entered upon the duties of said office, and has excluded contestant therefrom, and is appropriating the fees and emoluments thereof to his own use, to contestant's damage in the sum of $500. That the fees and emoluments of said office are reasonably worth the sum of $2,400 per year, and that contestant was elected to said office for a period of two years, commencing January 1, 1923, and ending January 1, 1925, and is entitled to the fees and emoluments thereof for said period of time."

And in the prayer contained in contestant's amended petition there was prayed for this additional relief to that prayed for in the original petition: That the district court should count for contestant all votes returned for him from election precinct No. 4, and that contestant have such orders and process as should be necessary to put him into possession of the office of county commissioner.

To the amended petition as a whole the contestee, Turner, again urged his demurrer and special exceptions, which the judgment recites were overruled, and the cause proceeded to trial, as specially set by the court, and was tried to the court, and judgment was rendered ousting contestee, Turner, from the office of county commissioner of precinct No. 4, and declaring that contestant, Allen, had been duly elected to the office, and ordering that he be placed in possession of the office, to which judgment contestee duly excepted, and gave notice of appeal to this court, and has duly prosecuted the same.

The trial court, at appellant's request, filed findings of fact and conclusions of law; but it is not necessary to mention these in detail, in view of the disposition that we have decided must be made of the appeal. The main finding of fact made by the trial judge was that the action of the commissioners' court at its August term, subsequent to the primary election, in making the order changing and re-establishing the boundaries of commissioners' precincts 1 and 4, was arbitrary, a gross abuse of discretion, and was fraudulent, for the reason, as stated by the court, that such order was not made for the convenience of the people, as it purported to be, but that it was made by the court with a view to defeating Allen and electing Turner at the general election. The trial court concluded as a matter of law that said order of the commissioners' court was absolutely null and void, and. for that reason in no manner affected the legal status of commissioner's precinct No. 4 as it existed prior to and at the time of the primary election, and that therefore all the voters who voted for Allen in the general election in election precinct No. 4 were legal votes for him, and must be counted for him. The court further held as a matter of law that the commissioners' court had no power or authority to change the boundaries of commissioner's precinct 4 after the primary election had been held, and after contestant had received the nomination, because such change had the effect of depriving contestant of the rights conferred upon him by law as such nominee, and to deprive the people of the right to elect him in the general election to follow in November. The court further held as a matter of law that this action or proceeding is one for an office, and not for the contest of an election.

[1] We shall first dispose of appellant's contention challenging the trial court's conclusion of law that this is a suit for an office, and not a contest of an election.

We have already copied in full contestant's original petition of contest, and that instrument, of course, shows for itself, beyond any controversy, and, in fact, it is admitted by counsel for appellee, that the original petition made nothing more than a contest of an election; but he contends that by his amended pleading he wholly changed the cause of action, and thereby made the suit one for an office. We have shown above the

only change made by the amendment, and that was to add to the allegations contained in the original petition the further statement of fact that the office of county commissioner of precinct No. 4 was one of greater value than $500, and that contestant was entitled to the emoluments of the office. As we have stated above, the form of the amended pleading is exactly the same as that of the original. Contestant continues in the amendment to designate himself as "contestant" all the way through, and contestee as the "contestee" all the way through, and the pleader in the amended petition, as in the original, was careful to allege in minute detail all the facts that would confer jurisdiction upon the district court to hear and determine a statutory contest of an election, and just before concluding the amended pleading the pleader again, in paragraph 12, repeats and shows to the court that he caused to be prepared a notice of contest in which was stated his grounds for contest, and that he caused the same to be served upon the contestee within the 30 days after the declaration of the result of the election had been made by the commissioners' court. This was an allegation of fact that was absolutely necessary to be made and sustained by proof in order to give the district court jurisdiction to hear and determine a contest for an election, and has no place and serves no purpose in a suit for an office. It is true that it would not be necessary in an election contest, under the statute, to allege the value of the office in question, and yet it would not be objectionable or improper for any reason to do so, and that is all, in substance, that contestant did in the way of adding allegations of fact to his original pleading, which he admits presents only a contest for an election. We think that contestant's pleading, construed as a whole, makes this nothing but an election contest, and that it was so considered and treated by both parties and by the trial court, as reflected by this record. A strong circumstance to sustain this conclusion is the fact that, after adding the allegation by the amended pleading that the office was one of the value of more than $500, contestant offered no proof whatever to sustain that allegation, which alone, he says, changed his original cause of action from an election contest to that of a suit for an office.

[2, 3] The trial court, in making his findings of fact, realized that there had been no proof offered by contestant as to the value of the office, and therefore, in order to sustain this judgment, the trial court deemed it necessary to take judicial knowledge of the value of the office, and did so. Construing contestant's pleading as a whole in this case, in an attempt to arrive at the character of the action, as we must do, and taking and reading the pleading in the light of the conduct of the parties and the construction placed upon it by contestant, we are forced to the conclusion that this proceeding is nothing more than a contest of an election, and not a suit for an office. The two causes of action are wholly separate and distinct, one being a special statutory proceeding, which requires strict compliance with the provisions of the statutes in order to confer jurisdiction upon the district court, and the other being an ordinary civil action in the nature of any other of that character.

[4] In an election contest in the district court, under the statutory provisions of this state, the authority and jurisdiction of the court is limited and confined in the inquiry to matters happening on the day of election, and pertaining strictly to the election, such as the casting and counting of the ballots, and the actions and conduct of the officers holding the election. The contestant must succeed or fail according to the result of the inquiry touching such matters only. Articles 3062 and 3063, Revised Statutes; Canales v. Mullin (Tex. Civ. App.) 185 S. W. 420; Cofield v. Britton (Tex. Civ. App.) 109 S. W. 493; Bassel v. Shanklin (Tex. Civ. App.) 183 S. W. 105; Norman v. Thompson, 96 Tex. 250, 72 S. W. 63; Lowery v. Briggs (Tex. Civ. App.) 73 S. W. 1062; Kilgore v. Jackson, 55 Tex. Civ. App. 99, 118 S. W. 819, 823.

[5] Appellant also contends that it is admitted by appellee in his pleading in this case that appellant got a greater number of votes cast in the general election for the office of county commissioner in precinct No. 4, as re-established by the order of the commissioners' court in August prior thereto, than was received by appellee, and that, this fact being admitted in appellee's pleading, the judgment in this case cannot stand, whether this proceeding be one for the contest of an election or a suit for an office. If such admission is made in appellee's pleading, and if we are correct in our construction that this proceeding is a contest of an election, then the trial court's judgment cannot be sustained. Counsel for appellee contends that no such admission is made in his pleading. In determining these divers contentions, this court is compelled to be governed by the pleading itself as a whole. After carefully reading and analyzing the appellee's pleading, we are constrained to hold that it does admit, expressly, that in the general election in commissioner's precinct No. 4, as re-established by the commissioners' court, Turner, appellant, received more votes than were received by appellee, Allen. All the paragraphs of appellee's amended petition preceding the fifth paragraph contain allegations of fact with the view to showing that Turner conceived his plan to defeat Allen at the general election by introducing a resolution in the commissioners' court changing the boundaries of commissioner's pre-

cinct No. 4, and that he succeeded in getting the commissioners' court to conspire with him in bringing about that result. All such allegations are fully shown by the petition as we have copied it, and speak for themselves. Then in paragraph 5 of the petition, which we again quote at this point, we find these express allegations:

"That at the general election held in November, 1922, the said Allen received a large majority of the votes cast for commissioner within the boundaries of precinct 4, as the same now legally exists and existed before the passage of the said Turner resolution, but the said Turner, as planned by him, received a majority of the votes cast for commissioner in the precinct as attempted to be changed by his resolution for his special benefit."

It is clear from the petition as a whole that the pleader is contending that the legal status of commissioner's precinct No. 4 was not changed at all by the said order of the commissioners' court in August, for the reason that such order was absolutely null and void, and that therefore all votes that were cast in said election precinct No. 4 for Allen were legal votes for him, and ought to have been counted for him, but that they were not counted for him by the commissioners' court because they were cast by voters who, by reason of the change in the precinct boundaries, could not vote for Allen, and that therefore Turner was enabled to secure more votes in the precinct as changed, than were received by Allen. Therefore the pleader said:

"But the said Turner, as planned by him, received a majority of the votes cast for commissioner in the precinct, as attempted to be changed by his resolution for his special benefit."

We think that the only reasonable construction to be placed upon appellee's pleading as a whole on this point is that the alleged scheme and conspiracy of Turner and the commissioners' court in passing the order changing the boundaries of commissioner's precinct No. 4, resulted in Turner's getting more votes at the general election for the office of county commissioner than were received by Allen. Therefore we sustain the contention of appellant that it is admitted by appellee in his pleading that at the general election appellant got more votes for the office of county commissioner than Allen got in the district as changed and re-established by the commissioners' court. Now, if we are correct in this conclusion, and also correct that this is an election contest, and not a suit for office, we might dispose of the case without proceeding any further, because, as we have shown, in a contested election proceeding, only such matters as happen on the day of election and pertain strictly to the election may be inquired into or determined by the district court, and, under this rule of law, the action of the commissioners' court in changing the boundaries of commissioner's precinct No. 4, as they did, could not be inquired into or considered by the trial court.

But, if this is not a statutory contest of an election, but, on the contrary, is a suit for an office, can the judgment of the trial court be sustained? If it can, it must be upon the theory that the judgment and order of the commissioners' court as made at the August term, after the primary election, changing and re-establishing the boundaries of commissioner's precinct No. 4, was null and void. It has been many times held by the appellate courts of this state that the commissioners' court in Texas is one of general jurisdiction, and that the orders and judgments of that court pertaining to matters within the sphere of its powers as conferred by law are as binding and conclusive as are the orders and judgments of any other court of this state of general jurisdiction. Williams v. Ball, 52 Tex. 603, 36 Am. Rep. 730; Bradford v. Moseley (Tex. Com. App.) 223 S. W. 171; Padgett v. Young County (Tex. Civ. App.) 204 S. W. 1046; Busch & Co. v. Caufield (Tex. Civ. App.) 135 S. W. 244; Gaines v. Newbrough, 12 Tex. Civ. App. 466, 34 S. W. 1048; Callaghan v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 837; School Trustees v. Farmer, 23 Tex. Civ. App. 39, 56 S. W. 555.

[6] By section 18, art. 5, of the Constitution of this state, the commissioners' court is vested with authority to change and re-establish "from time to time" county commissioners' precincts "for the convenience of the people." It is clear from this provision of the Constitution that the county commissioners' court in Texas is given the power and authority to change and re-establish county commissioners' precincts at any time they may deem it to be for the convenience of the people to do so, and, when such authority and power so conferred is exercised by that court, its action is not void. The action may be reviewed or corrected, when erroneously or wrongfully or improperly exercised, by a proper proceeding for that purpose, but such action, though it amounts to a gross abuse of the court's discretion, and though it, in effect, constitutes a legal fraud upon persons who may be affected by the court's action, is not void, and cannot be attacked or impeached collaterally. So in this case the order of the commissioners' court, made at its August term, before the general election changing and re-establishing the boundaries of the commissioners' precincts Nos. 1 and 4, cannot be successfully attacked by the contestant in this case in this proceeding, because, admittedly, this attack is not a direct attack upon that order, but, under all authorities, is a collateral attack. State v. Goowin, 69 Tex. 55, 5 S. W. 678; Ewing v. State, 81 Tex. 172, 16 S. W. 872; Scarbrough

v. Eubank, 93 Tex. 106, 53 S. W. 573; Parker v. Harris County Drainage District (Tex. Civ. App.) 148 S. W. 358; McCormick v. Jester, 53 Tex. Civ. App. 306, 115 S. W. 278; Wright v. Jones, 14 Tex. Civ. App. 423, 38 S. W. 249; Haverbekker v. Coryell County (Tex. Civ. App.) 247 S. W. 1086; 23 Cyc. 1062; Austin Bros. v. Road District (Tex. Civ. App.) 247 S. W. 674; Temple Lumber Co. v. Commissioners' Court (Tex. Civ. App.) 239 S. W. 668.

We do not understand that counsel for appellee contends that an order or judgment of a commissioners' court in Texas, made in the exercise of its lawful powers, can be successfully attacked in a collateral proceeding, but counsel contends that this rule applies only to parties and privies to such proceedings, and further contends that the appellee in this case was not a party in any sense to the judgment or order of the commissioners' court changing and re-establishing the boundaries of commissioner's precinct No. 4, and that therefore he may attack it collaterally.

We cannot agree with counsel's contention that appellee was in no sense a party to the order of the commissioners' court here in question. The effect of that order was to fix the status of two of the commissioners' precincts in Jefferson county, a subject-matter over which that court had jurisdiction, under the express provisions of the Constitution itself, and appellee and all other citizens within such precincts are, in contemplation of law, parties to such order and proceeding, in the sense that they cannot attack it collaterally. The order of the commissioners' court in this matter has the effect, in legal contemplation, of a judgment in rem, and everyone is bound by it so long as it is not annulled and set aside by a court having jurisdiction to do so in a direct proceeding or action of some character instituted with that end in view. Such order of the commissioners' court never having been attacked by any character of proceeding prior to the institution of this suit, it was in effect, in legal contemplation, on the day that the general election was held in November thereafter, and under its provisions voters who did not reside in commissioner's precinct No. 4 on the day of election could not legally vote for any candidate for that office. Therefore, it being admitted in appellee's pleading, as we have held, that appellant got more votes in the district as re-established by the commissioners' court than were received by appellee, it must follow, as a matter of law, that the judgment of the trial court in this case was erroneous, because the effect of that judgment was to permit appellee to collaterally attack and set aside and annul the order of the commissioners' court. There can be nothing in appellee's contention that the commissioners' court had no power to make the order in question after appellee had secured the nomination for county commissioner in the primary election in July. Under the express provision of the Constitution (section 18, art. 5) the commissioners' court, as we have shown, is authorized to re-district and change commissioners' court precincts from time to time, and there is no limitation as to time. State ex rel. Dowlen v. Rigsby, 17 Tex. Civ. App. 171, 43 S. W. 271; Williams v. Castleman (Tex. Sup.) 247 S. W. 263.

From the conclusions we have reached, it follows that the trial court's judgment in this case ousting appellant from the office of county commissioner, and awarding the same to the appellee, was erroneous, and must be reversed, and, since in a proceeding of this character the order of the commissioners' court in question cannot be attacked, but must stand as made until set aside by proper proceedings for that purpose, the only judgment that the trial court could have rendered, under the pleadings and admissions contained in them, was one that the contestant take nothing by this proceeding. The trial court's judgment is therefore reversed and set aside, and it is the judgment of this court that contestant take nothing by this proceeding. From the conclusions reached by us and the disposition made of this case, it does not follow that contestant may not, in an action or proceeding appropriate for the purpose, recover from appellant the office of county commissioner of precinct No. 4, if he, in fact, was legally elected to that office. All we hold is that in the present proceeding, under the state of the record before us, contestant was not entitled to the relief granted him.