## BROWN v. MEEKS.

### No. 10107.

Court of Civil Appeals of Texas. San Antonio.

Sept. 29, 1936.

Rehearing Denied Oct. 2, 1936.

J. I. Kercheville, Wm. Aubrey, Raymond Gerhardt, M. L. Roark, and J. Arthur Sandlin, all of San Antonio, for appellant.

Leonard Brown, Johnson, Rogers & Slatton, and R. L. Neal, all of San Antonio, for appellee.

MURRAY, Justice.

This is an election contest between S. M. (Charles) Meeks and Gus Brown over the Democratic nomination for the office of constable of precinct No. 1, Bexar county, Tex.

The contest was begun by Meeks, and this suit was filed in the Thirty-Seventh district court of Bexar county, and resulted in a judgment in his favor declaring him to be the Democratic nominee as the result of the primary election held July 25, 1936, for the office of constable of precinct No. 1, Bexar county, Tex., from which judgment Brown has prosecuted this appeal.

The controversy arose in this manner: Heretofore justice of the peace precinct No. 1, of Bexar county, has been composed of that territory which lies within the city limits of the city of San Antonio, including voting precincts 1 to 105, inclusive, and the territory which lies within the city limits of the city of Alamo Heights, including voting precincts 138 to 140, inclusive, and certain rural territory, which includes voting precincts 134 and 141.

On April 1, 1936, the commissioners' court of Bexar county, decided to redistrict the county with reference to justice of the peace precincts, and on that date passed an order which by its terms was to become effective on January 1, 1937, redistricting Bexar county, and subdivided the county into five instead of eight justice precincts.

On May 1, 1936, the commissioners' court passed another order, effective January 1, 1937, adding to precinct No. 1 voting precincts 106 to 113, inclusive.

However, on June 1, 1936, the commissioners' court set aside its order as passed on May 1, 1936, and amended its said order of April 1, 1936, by passing the following order, which was also effective January 1, 1937, to wit:

"Orders County Commissioners' Court of Bexar County, Texas,
"Monday, June 1st, 1936.
"Order Rescinding Order Dated May 1, 1936, and Amending Order Dated April 1, 1936, Re-Districting Justice Precincts.

"On motion of County Commissioner Robt. F. Uhr, seconded by County Commissioner J. W. Donnell, all members of the Court being present and voting 'Aye,' it is hereby ordered by the Court as follows:

"The order dated May 1, 1936, transferring voting Precincts Nos. 106 to 113, inclusive, from Justice Precinct No. 6, to Justice Precinct No. 1, is hereby revoked.

"The order dated April 1, 1936, re-districting Justice Precincts of Bexar County, Texas, is hereby amended so as to hereafter read as follows:

"Bexar County, Texas, is hereby re-districted in the matter of Justice of the Peace Precincts, effective as of January 1, 1937, as follows:

"Justice of the Peace Precinct No. 1: The city limit lines of the City of San Antonio, including the city limit lines of the city of Alamo Heights, and in addition thereto voting Precincts Nos. 106 to 113, inclusive, shall constitute Justice of the Peace Precinct No. 1. Justice of the Peace Precinct No. 1 shall have two (2) Justices of the Peace, to be known as Place No. 1 and Place No. 2. Justice of the Peace precinct No. 1, shall have one (1) Constable and shall have one (1) Public Weigher.

"Justice of the Peace Precinct No. 2: The boundaries of the present Commis-

sioners' Precinct No. 2, except that part which lies within the corporate limits of the City of San Antonio, shall constitute Justice of the Peace Precinct No. 2. Justice of the Peace Precinct No. 2 shall have one (1) Justice of the Peace and one (1) Constable, and shall have one (1) Public Weigher.

"Justice of the Peace Precinct No. 3: The boundaries of the present Commissioners' Precinct No. 3, except that part which lies within the corporate limits of the city of San Antonio, and except the territory within the corporate limits of the city of Alamo Heights, shall constitute Justice of the Peace Precinct No. 3. Justice of the Peace Precinct No. 3 shall have one (1) Justice of the Peace and one (1) Constable, and shall have one (1) Public Weigher.

"Justice of the Peace Precinct No. 4: The boundaries of present Commissioners' Precinct No. 4, except that part which lies within the corporate limits of the City of San Antonio, shall constitute Justice of the Peace Precinct No. 4. Justice of the Peace Precinct No. 4 shall have one (1) Justice of the Peace and one (1) Constable, and shall have one (1) Public Weigher.

"Justice of the Peace Precinct No. 5: The boundaries of present Commissioners' Precinct No. 1, except that part which lies within the corporate limits of the City of San Antonio, and except voting Precincts Nos. 106 to 113, inclusive, shall constitute Justice of the Peace Precinct No. 5. Justice of the Peace Precinct No. 5 shall have one (1) Justice of the Peace and one (1) Constable and shall have one (1) Public Weigher.

"The Justices of the Peace and Constables in the five (5) Justice of the Peace Precincts, as hereinabove constituted, shall remain on what is commonly known as the fee basis.

"Any resident in any of the several Justice of the Peace Precincts Nos. 1 to 8, inclusive, who will be after January 1st, 1937, a resident in any of the several Justice of the Peace Precincts Nos. 1, 2, 3, 4 and 5, as hereinabove re-districted, and who is otherwise qualified may become a candidate for the office of Justice of the Peace, Constable or Public Weigher in such Justice of the Peace Precinct of his residence, as hereinabove defined, and the several candidates for such offices in the several Justice of the Peace Precincts, as

hereinabove defined, who shall be duly nominated in the July, 1936, primary, and duly elected at the general election in November, 1936, shall be the duly elected Justices of the Peace, Constables and Public Weighers in said respective Justice of the Peace Precincts, and shall respectively assume office January 1, 1937.

"The qualified voters in the respective Justice of the Peace Precincts, as hereinabove defined, may vote in any Primary or General Election for the candidates for Justice of the Peace, Constable and Public Weigher who stand for election in the respective Justice of the Peace Precincts, as hereinabove defined."

This order placed practically all the territory of what we will hereafter call "Old Precinct No. 1 and Old Precinct No. 6" into what we will hereafter call "new Precinct No. 1." The only territory in old precinct No. 1, which was not included in New precinct No. 1, was that territory in which are situated voting precincts Nos. 134 and 141.

At the Democratic primary, held on July 25, 1936, S. M. Meeks and Gus Brown were opposing candidates, and the only candidates, for the office of constable of precinct No. 1, Bexar county. The election was not held in old precinct No. 1, but was held in new precinct No. 1. Thus the Democratic executive committee attempted to give effect to the last two paragraphs of the order of June 1, 1936, which provided, in effect, that, while the New Precinct No. 1 was not to come into existence until January 1, 1937, persons might become candidates and vote as though the order had gone into immediate effect; that is, on June 1, 1936, prior to the primary election.

According to the election returns, Brown received a majority of 498 votes in the territory which was to constitute new precinct No. 1, if, as, and when the order of June 1, 1936, became effective.

This presents the question of whether or not it was within the power of the commissioners' court to authorize persons to become candidates for office and vote in a precinct to be created in the future, or whether such persons otherwise possessed the legal right to become candidates and to vote in such new precinct No. 1, as was stated in such order.

The Constitution and statutes of this state, particularly article 2927, R.S.1925,

prescribe the qualifications of candidates. One of such qualifications is that a candidate for office must reside for six months in the precinct in which he attempts to become a candidate for office. Certainly no one is at the present time a resident of new precinct No. 1, for the very simple reason that this legal entity does not exist at the present time. It will not come into existence, according to its own terms, prior to January 1, 1937. Until that time no legal entity in the form of a new justice precinct is in existence.

There can be no question as to the power of the commissioners' court to create new justice precincts, from time to time, for the convenience of the people. This power is given to the commissioners' courts by the Constitution of Texas (article 5, § 18) and by the statutes of this state. Article 2351, subd. 1, R.C.S.1925; State ex rel. Dowlen v. Rigsby, 17 Tex. Civ.App. 171, 43 S.W. 271; Turner v. Allen (Tex.Civ.App.) 254 S.W. 630.

The commissioners' court also has the power, when lawfully exercised, to pass an order redistricting the county into new justice of the peace precincts to become effective in the future. Gale et al. v. Board of Sup'rs of Oakland County, 260 Mich. 399, 245 N.W. 363. Such an act, being legislative in its nature, may be made to become effective after the expiration date of the terms of offices of the members of the commissioners' court passing the order, as it in no way binds their successors in office. Such successors are free to amend or repeal such a legislative order. See State ex rel. Brunjes v. Bockelman (Mo.Sup.) 240 S.W. 209.

We are not here passing upon the question of whether or not the commissioners' court abused its discretion in passing this order, but only upon its jurisdiction to do so. In a statutory election contest such question as abuse of discretion cannot properly be raised. It can only properly be raised by an appeal from the order of the commissioners' court to the district court or in a direct proceeding brought for the purpose of having the order declared void. It may not be raised by a collateral attack on such order.

However, when the commissioners' court attempts to determine who may become a candidate or vote in such new districts, it is attempting to legislate upon a subject over which it has no jurisdiction. The Legislature of this state has fixed the qualifications of candidates for the office of constable, or any other precinct officer, article 2927, R.S.1925, and the commissioners' court cannot add to or take from these qualifications. Dillon on Municipal Corp. (5th Ed.) vol. 1, p. 635, § 371.

Article 6878, R.S.1925, likewise prescribes who may vote in a constable's election, and this, of course, cannot be altered in any way by the commissioners' court. The Legislature is the supreme legislative power of the state, and, where an order of the commissioners' court conflicts with a proper legislative act, the order must give way and the act of the Legislature prevail.

It is therefore clear that until January 1, 1937, there will not be in new precinct No. 1 any person who can vote or become a candidate for office, as such new precinct does not come into existence prior to that date. State v. Bockelman, supra.

It follows that neither Brown nor Meeks was eligible to become a candidate for the office of constable of new precinct No. 1, and neither the people living in old precinct No. 1, nor old precinct No. 6, would be qualified to vote for the precinct officers of new precinct No. 1, until it came into existence on January 1, 1937.

The attempted nomination of a candidate for constable of new precinct No. 1 before it comes into existence is entirely void, and no one is entitled to such a nomination. On January 1, 1937, when the new precinct for the first time comes into existence, then and in that event it will be the duty of the commissioners' court to appoint new officers for the new precinct. State ex rel. Robbins v. Parker, 147 Iowa, 69, 125 N.W. 856.

Meeks insists that, being a resident of old precinct No. 1, and having received a majority of the votes polled in old precinct No. 1, he is entitled to the nomination for constable of old precinct No. 1. The trouble is, there was no election held for constable of old precinct No. 1. None such was intended; the names of the candidates were submitted to the voters of the proposed new precinct. Their names were not submitted to the voters of voting precincts Nos. 134 and 141, because these precincts, while a part of the old precinct, were not a part of the proposed new precinct. It is not rea-

sonable to suppose that either candidate was running for an office that would not be in existence on January 1, 1937, the date set for new officers to qualify. It is not reasonable to suppose that the officers in charge would hold a primary for the nomination of a candidate to an office that would not exist when new terms of office would begin. Cooley's Constitutional Limitations (8th Ed.) vol. 2, pp. 1394, 1395.

It appears that the commissioners' court, in passing the order of June 1, 1936, thought they were doing a fair thing, in that they provided that any person who would live in the new precinct after January 1, 1937, could become a candidate in the July primary and the November general elections, and that any voter who would live in the new precinct after January 1, 1937, could vote at such primary and general elections, but the result of this order is that, when the new precincts come into existence, all precinct offices will be vacant and the commissioners' court will be charged with the duty of filling these precinct offices by appointment.

This appeal presents propositions for our decision which, in practical effect, are most unfortunate and regrettable. A primary election has been held at great expense of money and energy to select Democratic nominees for precinct offices in Bexar county. It is plain that all persons,— candidates and voters,—had full opportunity and a fair chance in the contest. There is no suggestion of corruption, wrong-doing, or fraud on the part of any one concerned. It is clear that the commissioners' court, in connection with its desire to reduce the number of precincts and the expense of government, undertook, in good faith, to provide that the people should have the privilege of electing their own precinct officers for the next two years, beginning January 1, '1937, and at the same time not throw out of office the present incumbents who were duly elected to public office. In furtherance of such undertaking and desire, the commissioners' court properly sought legal advice from the district attorney of Bexar county and the Attorney General of Texas. The Attorney General first advised that the provisions of the order redistricting the precincts and making same effective January 1, 1937, was valid, but that under such order and existing law the commissioners'

court would have to appoint all precinct officers for such new term. Later, however, the Attorney General advised that the said order, as presented and later passed on June 1st, 1936, was valid in all of its provisions and stipulations.

It is clear from what has been said above that, under the plain provisions of the election statutes, persons cannot become candidates for an office that does not exist, nor can voters cast their ballots for such candidates. All parties are bound by such statutes. While we regret the consequences of such attempts to circumvent the statutes, though for an apparently laudable purpose, it is our plain duty and complete desire to declare the law as it is written.

█ There exists good authority, based on sound principle and reason, that the above order is wholly void on the ground that it has the effect of denying the people of all the precincts in Bexar county the right to choose their own officers for the two-year term beginning January 1, 1937. Cooley's Constitutional Limitations (8th Ed.) vol. 2, p. 1394, and authorities cited.

Notwithstanding such situation, and under the decisions of our Supreme Court, this question cannot be raised or presented through a statutory election contest as we find before us in this appeal. Turner v. Allen, supra.

It therefore appears that the trial judge properly held that Brown was not the Democratic nominee for the office of constable of precinct No. 1, but was in error in holding that Meeks was such nominee. That part of the judgment which declares Meeks to be the nominee will be reversed and judgment here entered that neither Brown nor Meeks is the nominee for said office of constable and the name of neither shall appear upon the official ballot for the general election to be held on November 3, 1936, as a result of the Democratic primary election held on July 25, 1936.

In order that this contest may be finally disposed of before the time arrives for printing the ballots for the general election, the parties hereto will be allowed only three days within which to file motions for rehearing.

SMITH, C. J., did not participate in the decision of this case.