

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**WAGGONER CARR**
**ATTORNEY GENERAL**

March 22, 1965

*Modifies WW-547*

Honorable Frank Ginzel
County Attorney
Mitchell County
Colorado City, Texas

Opinion No. C-406

Re: Whether certain named
persons were elected
Constable and Justice
of the Peace under the
stated facts.

Dear Sir:

You have requested an opinion on whether there was
a valid election, at the general election in 1964, to fill the
offices of Constable and Justice of the Peace of Precinct 3,
Mitchell County, under the facts stated in your opinion request
as follows:

"In April, 1963, the Commissioners Court of
Mitchell County, Texas, changed the various boundary
lines of each Commissioner's Precinct in an effort
to equalize the voting strength and roads to be
maintained. Such order did not say anything about
the Justice of the Peace Precincts; on August 10,
1964, the Commissioners Court, as a body, by an
order entered on the Minutes of the Commissioners
Court Docket, changed the Justice of the Peace
Precinct boundary lines, of all precincts, making
them conform and correspond with each Commissioner's
Precinct boundary lines conditioning such order,
as applied to the Justice Precincts, to become
effective January 1, 1965.

"Thereafter, at the general election, held
November 3, 1964, H. S. Hickman and Mose Allen
received some write-in votes for Justice of the
Peace and Constable, respectively. Both of these
men stand ready to take office as Justice of the
Peace and Constable of Precinct 3. Previously, the
office of Justice of the Peace and Constable of
Precinct 3 have been dormant for many years.

"I understand both of these gentlemen reside in
Precinct 3, but in that part of Precinct 3 which was
taken from Precinct 1 and added to Precinct 3 in the
equalization order of the Commissioners Court,

-1920-

pertaining to the added territory of Commissioner of Precinct 3. It would seem that the office of Commissioner and Justice of the Peace, of Precinct 3, became identical as to territorial limits effective January 1, 1965. This being so, does the case of Brown vs. Meeks, 96 S.W.2d 839, control the situation? If, following the reasoning of Brown vs. Meeks, the office did not come into existence until January 1, 1965, then it would appear that neither of the officials were elected to this office. Both have resided in Precinct 3 set up in 1963, for Commissioners, since then. On the other hand, if Brown vs. Meeks does not apply to this situation, then both desire to qualify."

You have informed us that at the 1964 general election there was no candidate for either of these offices whose name was certified for a place on the ballot as a party nominee or as an independent candidate, and the titles of these two offices were not printed on the ballot. The write-in votes which Mr. Hickman and Mr. Allen received were by the voters' having written in both the title of the office and the name of the candidate in each instance.

If the offices of Justice of the Peace and Constable of Precinct No. 3, as the precinct was redefined and established by the order of August 10, 1964, to become effective January 1, 1965, could have been filled by election at the general election in 1964, we are of the opinion that these two individuals were validly elected by virtue of the write-in votes. Although, as you state, the offices had been dormant for many years, they nevertheless continued to exist as offices created by the Constitution1/ and were subject to being filled at the general election, the office of Constable for the full term of four years beginning on January 1, 1965, and the office of Justice of the Peace for the unexpired portion of the term which began on January 1, 1963. Att'y Gen. Op. WW-1499 (1962). In Bryant v. O'Donnell, 359 S.W.2d 281 (Tex.Civ.App. 1962), the court held that write-in votes cast at a primary election by the voters' having written

---

1/ Article V, Section 18 of the Texas Constitution provides that each county shall be divided into not less than four and not more than eight justice precincts, and "in each such precinct there shall be elected one Justice of the Peace and one Constable, each of whom shall hold his office for four years * * *." Article XVI, Section 65 of the Constitution and Article 17, Revised Civil Statutes, taken together, establish current terms of Justices of the Peace as beginning on January 1, 1963, and of Constables as beginning on January 1, 1965.

in the title of the office and the name of the candidate were valid, and that the write-in candidate who received a majority of such write-in votes was validly nominated, even though the number of write-in votes cast for the office was only a small fraction of the total number of voters participating in the election.2/ This holding would be equally applicable to write-in votes cast in a general election.3/

However, we are of the opinion that the validity of the election for these two offices depends upon an entirely different principle and is controlled by the holding in Brown v. Meeks, 96 S.W.2d 839 (Tex.Civ.App. 1936, error dism.). Under the rule in that case, there was no valid election for Justice of the Peace or Constable as those offices were to exist after January 1, 1965, in any of the precincts whose boundaries were changed by the order of August 10, 1964.

In the Brown case, the Commissioners Court of Bexar County, prior to the primary election in 1936, had entered orders changing the boundaries of the justice precincts and reducing the number of precincts from eight to five, and had provided that the changes were to be effective as of Janaury 1, 1937. The order of the Commissioners Court also made the

---

2/ In 1963, Article 13.09 of Vernon's Texas Election Code was amended to prohibit the counting of write-in votes under these circumstances in a primary election, by addition of the following provision: "If for any office, other than the party office of county chairman or precinct chairman, there is no candidate whose name is to be printed on the general primary ballot, the title of the office shall not be printed on the ballot and no write-in vote for such office shall be counted." There is no similar provision with respect to the ballot for the November general election.

3/ In 1959, this office held in Attorney General's Opinion No. WW-541 that the validity of an election by write-in votes, where the title of the office was not printed on the ballot, depended on whether the voters generally knew or should have known that an election for the office was taking place, and that this was a fact question, depending on all the surroundin circumstances, to be determined initially by the authority charged with the duty of canvassing the returns of the election. Bryant v. O'Donnell virtually overrules Opinion No. WW-541, although the court said that "the facts upon which the Attorney General based his opinion may readily be distinguished from the facts in the instant case." 359 S.W.2d at 286. (The court erroneously referred to Opinion No. WW-541 as Opinion No. O-2576, dated August 3, 1956.)

Honorable Frank Ginzel, page 4 (C-406)

following provision:

"Any resident in any of the several Justice of
the Peace Precincts Nos. 1 to 8, inclusive, who will
be after January 1st, 1937, a resident in any of the
several Justice of the Peace Precincts Nos. 1, 2, 3,
4 and 5, as hereinabove re-districted, and who is
otherwise qualified may become a candidate for the
office of Justice of the Peace, Constable or Public
Weigher in such Justice of the Peace Precinct of his
residence, as hereinabove defined, and the several
candidates for such offices in the several Justice
of the Peace Precincts, as hereinabove defined, who
shall be duly nominated in the July, 1936, primary,
and duly elected at the general election in November,
1936, shall be the duly elected Justices of the Peace,
Constables and Public Weighers in said respective
Justice of the Peace Precincts, and shall respectively
assume office January 1, 1937.

"The qualified voters in the respective Justice
of the Peace Precincts, as hereinabove defined, may
vote in any Primary or General Election for the
candidates for Justice of the Peace, Constable and
Public Weigher who stand for election in the respective
Justice of the Peace Precincts, as hereinabove defined."

The question presented in the case and the court's
holding are set forth in the following quotation from the
opinion:

"This order placed practically all the territory
of what we will hereafter call 'Old Precinct No. 1
and Old Precinct No. 6' into what we will hereafter
call 'new Precinct No. 1.' The only territory in old
precinct No. 1, which was not included in New precinct
No. 1, was that territory in which are situated voting
precincts Nos. 134 and 141.

"At the Democratic primary, held on July 25, 1936,
S. M. Meeks and Gus Brown were opposing candidates, and
the only candidates, for the office of constable of
precinct No. 1, Bexar county. The election was not held
in old precinct No. 1, but was held in new precinct No. 1.
Thus the Democratic executive committee attempted to
give effect to the last two paragraphs of the order of
June 1, 1936, which provided, in effect, that, while
the New Precinct No. 1 was not to come into existence
until January 1, 1937, persons might become candidates

and vote as though the order had gone into immediate effect; that is, on June 1, 1936, prior to the primary election.

"According to the election returns, Brown received a majority of 498 votes in the territory which was to constitute new precinct No. 1, if, as, and when the order of June 1, 1936, became effective.

"This presents the question of whether or not it was within the power of the commissioners' court to authorize persons to become candidates for office and vote in a precinct to be created in the future, or whether such persons otherwise possessed the legal right to become candidates and to vote in such new precinct No. 1, as was stated in such order.

"The Constitution and statutes of this state, particularly article 2927, R.S. 1925 /now Article 1.05, Vernon's Texas Election Code/, prescribes the qualifications of candidates. One of such qualifications is that a candidate for office must reside for six months in the precinct in which he attempts to become a candidate for office. Certainly no one is at the present time a resident of new precinct No. 1, for the very simple reason that this legal entity does not exist at the present time. It will not come into existence, according to its own terms, prior to January 1, 1937. Until that time no legal entity in the form of a new justice precinct is in existence.

"There can be no question as to the power of the commissioners' court to create new justice precincts, from time to time, for the convenience of the people. This power is given to the commissioners' courts by the Constitution of Texas (article 5, § 18) and by the statutes of this state. Article 2351, subd. 1, R.C.S. 1925; State ex rel. Dowlen v. Rigsby, 17 Tex.Civ.App. 171, 43 S.W. 271; Turner v. Allen (Tex.Civ.App.) 254 S.W. 630.

"The commissioners' court also has the power, when lawfully exercised, to pass an order redistricting the county into new justice of the peace precincts to become effective in the future.

Gale et al. v. Board of Sup'rs of Oakland County,
260 Mich. 399, 245 N.W. 363. Such an act, being
legislative in its nature, may be made to become
effective after the expiration date of the terms
of offices of the members of the commissioners'
court passing the order, as it in no way binds
their successors in office. Such successors are
free to amend or repeal such a legislative order.
See State ex rel. Brunjes v. Bockelman (Mo.Sup.)
240 S.W. 209.

" * * *

"However, when the commissioners' court
attempts to determine who may become a candidate
or vote in such new districts, it is attempting
to legislate upon a subject over which it has
no jurisdiction. The Legislature of this state
has fixed the qualifications of candidates for
the office of constable, or any other precinct
officer, article 2927, R.S. 1925, and the
commissioners' court cannot add to or take from
these qualifications. Dillon on Municipal Corp.
(5th Ed.) vol. 1, p. 635, § 371.

"Article 6878, R.S. 1925, likewise prescribes
who may vote in a constable's election, and this,
of course, cannot be altered in any way by the
commissioners' court. The Legislature is the
supreme legislative power of the state, and, where
an order of the commissioners' court conflicts with
a proper legislative act, the order must give way
and the act of the Legislature prevail.

"It is therefore clear that until January 1,
1937, there will not be in new precinct No. 1 any
person who can vote or become a candidate for
office, as such new precinct does not come into
existence prior to that date. State v. Bockelman,
supra.

It follows that neither Brown nor Meeks was
eligible to become a candidate for the office of
constable of new precinct No. 1, and neither the
people living in old precinct No. 1, nor old
precinct No. 6, would be qualified to vote for
the precinct officers of new precinct No. 1,
until it came into existence on January 1, 1937.

"The attempted nomination of a candidate for constable of new precinct No. 1 before it comes into existence is entirely void, and no one is entitled to such a nomination. On January 1, 1937, when the new precinct for the first time comes into existence, then and in that event it will be the duty of the commissioners' court to appoint new officers for the new precinct. State ex rel. Robbins v. Parker, 147 Iowa, 69, 125 N.W. 856.

"Meeks insists that, being a resident of old precinct No. 1, and having received a majority of the votes polled in old precinct No. 1, he is entitled to the nomination for constable of old precinct No. 1. The trouble is, there was no election held for constable of old precinct No. 1. None such was intended; the names of the candidates were submitted to the voters of the proposed new precinct. Their names were not submitted to the voters of voting precincts Nos. 134 and 141, because these precincts, while a part of the old precinct, were not a part of the proposed new precinct. It is not reasonable to suppose that either candidate was running for an office that would not be in existence on January 1, 1937, the date set for new officers to qualify. It is not reasonable to suppose that the officers in charge would hold a primary for the nomination of a candidate to an office that would not exist when new terms of office would begin. Cooley's Constitutional Limitations (8th Ed.) vol. 2, pp. 1394, 1395.

"It appears that the commissioners' court, in passing the order of June 1, 1936, thought they were doing a fair thing, in that they provided that any person who would live in the new precinct after January 1, 1937, could become a candidate in the July primary and the November general elections, and that any voter who would live in the new precinct after January 1, 1937, could vote at such primary and general elections, but the result of this order is that, when the new precincts come into existence, all precinct offices will be vacant and the commissioners' court will be charged with the duty of filling these precinct offices by appointment."

Honorable Frank Ginzel, page 8 (C-406)

        We think it obvious that the voters who voted for
Mr. Hickman and Mr. Allen intended to be voting for the offices
of Justice of the Peace and Constable of Precinct No. 3 as it
would exist after January 1, 1965, rather than as it existed
on the date of the election, for the reason, among others, that
neither Mr. Hickman nor Mr. Allen was eligible to the respective
office for old Precinct No. 3 because neither of them resided
within that precinct and could not legally have been declared
elected to it. Arts. 1.05 and 1.06, Vernon's Texas Election
Code. Under the holding in Brown v. Meeks, a valid election
for Justice of the Peace or Constable of new Precinct No. 3
could not have been held in November, 1964, because the
precinct was not yet in existence at that time.

        Brown v. Meeks has been cited in only two appellate
court opinions. Tobin v. Valerio, 309 S.W.2d 479, 480 (Tex.
Civ.App. 1958, error ref.); Childress County v. Sachse, 310 S.W.
2d 414, 420 (Tex.Civ.App. 1958, error ref. n.r.e. 158 Tex. 371,
312 S.W.2d 380.) Neither of these cases modified its holding
in any way. It stands as the law which we should follow in
this opinion unless it has been impliedly overruled by some
later case.

        In Anderson v. Penix, 138 Tex. 596, 161 S.W.2d 455
(1942), the Supreme Court had before it a 1941 Act of the
Legislature reorganizing the 30th Judicial District, which
by the express terms of the Act was to take effect on January 1,
1943. The Court held that the District Attorney for the 30th
District elected in 1942 for the term beginning January 1,
1943, should be elected from the district as reorganized.
This holding was followed in Attorney General's Opinion C-198
(1963), which held that nominations for the office of Judge
of a new district court which was to come into existence on
June 1, 1964, could be made at the primary elections held
in May, 1964.

        We feel that the holding in Brown v. Meeks is not in
harmony with Anderson v. Penix, but we cannot say that it was
impliedly overruled by the latter case. In the former case,
the action was taken by the commissioners court, which has
no power except that given to it by the Constitution or by
the Legislature; in the latter case, as in Opinion C-198, the
action was by the Legislature. In the Brown opinion, the court
itself provided a ground for differentiating the two cases,
when it said:

        ". . ./W_7hen the commissioners' court
    attempts to determine who may become a candidate
    or vote in such new districts, it is attempting

to legislate upon a subject over which it has
no jurisdiction. The Legislature of this state
has fixed the qualifications of candidates for
the office of constable, or any other precinct
officer, article 2927, R.S. 1925, and the
commissioners' court cannot add to or take from
these qualifications . . .The Legislature is the
supreme legislative power of the state, and,
where an order of the commissioners court conflicts
with a proper legislative act, the order must
give way and the act of the Legislature prevail."
96 S.W.2d at 842.

Since there is a ground on which the cases may be
distinguished, we feel impelled to follow Brown v. Meeks in
this opinion, although there is reason to believe that it
might be overruled if the question was again brought before
the courts. We therefore advise you that in our opinion no
one was elected to the office of Justice of the Peace or
Constable of Precinct No. 3 at the general election in 1964.

## SUMMARY

Where an office is subject to being filled at
the general election but the title of the office is
not printed on the ballot, a valid election may be
had through the voters' writing in the title of the
office and the name of the candidate, and the elec-
tion is not rendered invalid by reason of the fact
that only a small percentage of the voters partic-
ipating in the general election voted on that
particular office. Bryant v. O'Donnell, 359 S.W.2d
281 (Tex.Civ.App. 1962). Att'y Gen. Op. WW-541
(1959) is modified herein.

Where an order of the Commissioners Court of
Mitchell County, entered on August 10, 1964, changed
the boundary lines of justice of the peace precincts
and provided that the changes were to become effective
on January 1, 1965, a valid election for precinct
offices for the new justice precincts could not be
held at the general election in November, 1964,
because the precincts had not yet come into existence.
Brown v. Meeks, 96 S.W.2d 839 (Tex.Civ.App. 1936,
error dism.) Att'y Gen. Op. C-198 (1964) is
distinguished herein.

Yours very truly,

WAGGONER CARR
Attorney General

By *Mary K. Wall*
Mary K. Wall
Assistant

MKW:sj

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Malcolm Quick
George Black
Grady Chandler
Sam Kelley

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone